THOMAS A. McNEILL and others v. JAMES P. HODGES, Guardian.

*Guardian and Ward—Statement of Account—Confederate Transactions—Commissions.*

1. Where a guardian being indebted to D paid the amount to A for him, taking A's individual receipt, A being indebted to the estate, the guardian is entitled to credit for the amount paid.

2. A guardian is entitled to credit for an amount collected out of him under execution for costs in a suit instituted by him; and the fact that in another transaction between the guardian and one of the makers of

the note sued upon in said suit, where the guardian became his surety and took a mortgage to indemnify himself against loss, does not warrant the inference that he could also have protected himself against liability for such costs.

3. A guardian is not chargeable with moneys paid to the mother of his wards for their board after their arrival at full age, no objection being urged against the propriety or justness of the claim or of the price paid.

4. In stating a guardian account, it is not requisite to state a separate account between the guardian and the administrator of a deceased infant ward, where there is no allegation of any misconduct on the part of the guardian but simply an objection to the *manner* of stating his account; nor is it a ground of exception that the estate of the deceased ward is distributed and blended with the estates of the other wards in the general account.

5. Interest is properly chargeable against a guardian from the time moneys are received by him, there being no evidence that the same remained unemployed in his hands.

6. A guardian is chargeable upon notes received by him for the hire of slaves before the war, where the obligors were solvent and the guardian forbore to bring suit against them before and during the war.

7. Where a guardian received coin for the rent of land in 1859, '60 and '61 in amount equivalent to its rental value in U. S. currency, the legislative scale does not apply.

8. Where a guardian received and disbursed Confederate money at different times during the war, the funds received and paid out should be grouped as nearly as practicable, and the receipts equivalent to the disbursements scaled as of the time of making the latter, and the excess of the former, reduced by the scale independently applied, carried into the general account.

9. A guardian is not exusable for accepting Confederate money at its enormous depreciation, during the latter months of the war, in payment at its nominal value for debts contracted in its earlier stages, when the depreciation was slight; but a guardian is not chargeable with Confederate money received by him for rents and hires in 1863 and 1864 (due at the end of those years) which was kept distinct from his own funds.

10. A guardian is entitled to a credit for $100 paid to a referee in an action instituted by him before the war against an administrator for a settlement and dismissed at plaintiff's costs after the collection of a large amount, although no report or order of allowance by the court

can be found, the guardian testifying that the report was filed and that search has been made for it, and there being no suggestion of bad faith.

11. A guardian is entitled to credit for costs paid by him in a suit where the defendant was solvent, but the guardian being informed that the debt was doubtful accepted certain notes in settlement (which were afterwards paid) and paid the costs of the suit.

12. A guardian is entitled to commissions although he omitted to keep and render regular accounts, where no imputation is cast upon his integrity by reason of the neglect.

13. A guardian is not entitled to commissions upon any disbursement made after his ward arrives at full age.

(*Love* v. *Love*, 3 Ired. Eq., 104; *Filhour* v. *Gibson*, 4 Ired. Eq., 455; *Outlaw* v. *Farmer*, 71 N. C., 31 ; *Arnett* v. *Linney*, 1 Dev. Eq., 369; *Finch* v. *Ragland*, 2 Dev. Eq., 137 ; *Drake* v. *Drake*, 82 N. C., 443; *Washington* v. *Emery*, 4 Jones Eq., 32; *Whitford* v. *Foy*, 65 N. C., 265, cited and approved.)

SPECIAL PROCEEDING heard on appeal at Spring Term, 1880, of CUMBERLAND Superior Court, before *Eure, J.*

This was a proceeding instituted by the plaintiff wards against the defendant guardian in the probate court of Cumberland county for an account and settlement. The probate judge took testimony and stated an account, to which both parties filed exceptions. All the exceptions were overruled, and both parties appealed to the superior court, and from the ruling of the judge below, both parties appealed to this court.

Messrs. *McNeill & McNeill* and *McRae & Broadfoot* for plaintiffs.

•Messrs. *N. W. Ray* and *W. E. Murchison,* for defendant.

SMITH, C. J. The exceptions to the account stated by the probate judge and presented for review in the defendant's appeal may be divided into two classes; those taken by the plaintiffs and sustained ; those taken by the defendant and

overruled. They will be considered in their proper order as belonging to the one or the other class.

I. Exceptions of the plaintiffs which are allowed:

Exc. 1. For that the defendant (and when this word alone is used it is intended for the appellant, Hodges,) is credited with the sum of $20, paid, as voucher produced shows, to A. D. McLean against whom he then held claims which should have been applied as a set-off to discharge the demand: In explanation the defendant testifies that this sum was due for professional services to D. H. McLean and was paid to the former for him, and the form of the receipt given over-looked. This statement accepted as correct, and the case depends mainly upon the testimony of the defendant delivered upon a protracted and searching examination, and the ruling of the court must be reversed.

Exc. 2. For that the defendant is allowed a credit for the sum of $9.30, costs incurred in prosecuting an action against R. B. Smith and others, on their note and paid to the sheriff under execution: The circumstances under which the defendant was compelled to pay this money are not explained. The only information is furnished by the defendant who recollects that he recovered judgment and collected the debt and his impression is that he was unable to get more. It appears further that in 1869, the defendant became a surety to one of the makers of the note, for money borrowed to pay for land purchased, and the land was at the same time mortgaged for his indemnity against this contingent liability. The land was afterwards sold and the debt satisfied. The judge passing on the exception seems to have drawn from these facts the inference that the defendant could have protected the trust estate from the costs of his suit, and was negligent in failing to do so. But we do not think this conclusion is reasonably warranted. The expense incurred falls primarily upon the plaintiff in a suit, although successful, and are recovered in the final judgment

against the defendant. This payment was not voluntary, but forced out of the defendant by the process of the court, and in the absence of contradictory evidence, must be assumed to have been legally demanded of him. Upon the ordinary presumption of good faith in the conduct of a trustee, who has no personal interest to subserve, and is under no imputed influence antagonistic to duty, the money thus paid ought to be deemed rightfully expended and allowed. Nor does it follow because an indemnity was given in the mortgage for the defendant's protection as a surety to the note of the mortgagor, an entirely separate transaction, that the defendant could have provided against the costs and would not have done so if he could. We do not concur in the ruling which imposes this loss on the defendant.

Excs. 3, 4, 5. For that the defendant is allowed for sums paid, just before the bringing the action, to the mother for board, to-wit, $150.40, for Mary L.; $725.44, for Caroline E.; $735.44 for S. Campbell, her daughter: These charges rest upon the same ground and may be considered together. The first sum was disallowed and so much of the others as was for board furnished after the parties respectively arrived at full age. The facts connected with the matter are these: The wards continued to live with their mother after as before their majority, and the defendant had paid for their board up to the year 1866, at the rate of eight dollars per month for each, and no other arrangement or understanding was entered into. Mary L. became of age in June, 1859; knew that her guardian continued to pay her board and made no objection to his doing so. S. Campbell attained her full age in July, 1868, and Caroline E. hers in February, 1871, and was married in October, 1877. The defendant had notice of the intended present suit, and, just before at the request of J. L. Smith, and upon information that his mother wanted a settlement of her claims for board;

went with him to her house and found there also another
son and the said Campbell. These claims had often before
been asserted, but payment delayed because of the scarcity
of money, and the defendant deemed it his duty to adjust
and settle all demands upon the trust fund before delivering
over and accounting for what remained to the late wards.
The two sons and their mother retired to a room for private
consultation, and defendant supposed that the said Camp-
bell was with them, in reference to the board, while the de-
fendant remained on the piazza. The son soon came out
and suggested a charge of five dollars per month, asking if
that was too much, to which the defendant replied that it
was reasonable. It was accordingly settled upon that basis,
the board of those married paid up to the date of their mar-
riages, and that of S. Campbell to January, 1878. The in-
debtedness was discharged by the transfer of certain notes
against the defendan's son and the said W. J. Smith, both
of which he then believed and now believes were solvent,
and by his giving his individual note for $273, the residue
of the demand. These notes were accepted in payment,
and it does not appear that any complaint is made of their
sufficiency even now. No objection is urged against the
propriety or justness of the claim for board or of the price
charged, or that the sum paid was not due and owing to the
mother. The only complaint is that the settlement by the
defendant under the circumstances was unauthorized and
officious, and ought to be stricken from his account. This
seems to be a harsh and strained interpretation put upon
the defendant's act. He secured thereby no advantage to
himself, and, he says, he made the settlement when called
on from a sense of duty and would as willingly have left it
to his wards if he had supposed such to be their wish. He
held the estate in his hands and the means wherefrom to
pay the claim, some of it contracted during minority, and
his purpose was to prepare and deliver over the trust estate,

free from charges, to those who were entitled to it. The
settlement was under the supervision and with the approval
of the two sons, and, as he supposed, of the daughter S.
Campbell also. The parties whose uncontested indebted-
ness has thus been discharged in entire good faith, and they
relieved from any personal obligation, ought not to be al-
lowed unless under strict rules of law, to avail themselves of
the discharge and to refuse a credit for moneys honestly ex-
pended for their use and benefit by their trustee, upon an
imputation of officiousness in the act. The trustee ought
at least to be subrogated to the rights of the creditor whose
debt has been paid, and thus the wards left in full posses-
sion of every legitimate defence open to them of the claim
now preferred by the mother herself. We do not in this
impair the rule of law, that an officious interference and
payment of a debt by a stranger leaves him without remedy
against the debtor. This is not a case of the kind and that
principle cannot be invoked in resistance to this charge.
We think the judge misapplies the rule in rejecting a part
of the sum paid and entailing the loss upon the defendant
personally, and his ruling is reversed.

Exc. 6. For that a separate account is not stated between
the defendant and the administrator of the infant, Alice
Smith, and that her estate is distributed and blended with
those of her surviving brothers and sisters: The intestate
died in 1856, very young, and no administration was taken
out until the year 1878. The charges against the estate
were all paid by the guardian, and her share of the money
fund divided and passed over to the credit of her several
distributees. Two of the distributees received their parts
of the fund and had their shares of the slaves allotted in
1857 or 1858. Another distributee had partition of the
slaves and his part assigned therefrom in 1862. The rest
of the slaves were kept together until their emancipation,
and the hires mixed with the general fund and all included

in the accounts of the distributees as credits due to them respectively. It is not suggested that the administrator requires the intestate's estate for any purpose but to pay over to the distributees who have already received their parts. No advantage will accrue to them but delay and expense in severing the accounts, and for more than twenty years all seemed to have acquiesced in this appropriation of the estate. The fund was held in common; there was no legal representative with whom the guardian could come to an account; and the objection lies not to any official misconduct on his part, but to the manner in which the accounts are now taken. The parties are all before the court, and the judgment now to be rendered will conclude and settle the whole matter. Why should the administrator be permitted to withdraw a fund, which it instantly becomes his duty to pay over to those who have already recovered it? The legal title thereto is in the administrator, but the equitable owners are those to whom he must pay it when collected. We are not without the support of past adjudications upon the point. A similar question arose in *Love* v. *Love*, 3 Ired. Eq., 104, and RUFFIN, C. J., thus disposes of it: "The plaintiff did not administer for the purpose of satisfying debts. His intestate owes nothing; it is not pretended. The plaintiff is therefore but an administrator purely in trust for the next of kin of his intestate brother: * * * As the case stands, the next of kin (there being no creditors) were the *real owners of the property, and the legal title subsequently got by the administrator, but a shell. It may be used to protect but not to annoy the true owners.*" To the like effect are *Filhour* v. *Gibson*, 4 Ired. Eq., 455, and *Outlaw* v. *Farmer*, 71 N. C., 31. The cases cited in the brief for the exceptant are not in conflict with those referred to. The ruling of His Honor in support of the exception must be reversed.

II. Exceptions of the defendant overruled by the court.

Exc. 1. For that interest is charged against him from the

time when the moneys were received, and he is allowed in-
terest only from the date of the respective disbursements :
The defendant exhibits no evidence that the moneys re-
ceived remained unemployed in his hands for any space,
and it was his duty forthwith to apply them to the debts or
to invest in interest-bearing securities.   This it was his duty
to show if he seeks exemption from the obligation to account
for interest.   " Executors must expect to be charged with
interest," says the eminent judge delivering the opinion in
*Arnett* v. *Linney,* 1 Dev. Eq., 369, " unless they positively
and unequivocally swear that they have not used the money
themselves, nor loaned it to others, but have kept it on hand
for the necessary use of the estate.   We are obliged to adopt
this rule to prevent executors from taking undue advan-
tages ; since it is impossible to trace the money and prove
the particular uses made of it by the executor.   He can al-
ways exonerate himself by keeping fair accounts and purg-
ing himself on oath."   *Finch* v. *Ragland,* 2 Dev. Eq., 137.
Answering a similar exception to the charge of interest
without proof that the funds had been used, Gaston, J.,
says :   " It has been calculated upon the notes and debts
from the time when they became due, and upon the sales
from the expiration of the term of credit.   There has been
no interest account kept by the executor that less was in
fact received.   This exception is overruled."   The rule ap-
plies with greater force to a guardian whose primary duty
is to keep the fund at interest and well secured, and not, as
in the case of a personal representative to collect and ac-
count for only.   We sustain the court in overruling the ex-
ception.

Exc. 2. For that the defendant is not credited with the
notes of R. B. Smith and others for $145 and $231.50 due
for hire of slaves in 1858 and 1859 while he is charged with
the aggregate hires for those years :   It is in proof that two
of the parties bound in the notes, Smith and Williams, each

owned lands, and the defendant, deeming the debt secure, forbore to bring suit before and during the war. He assigns as a reason for not proceeding afterwards, the stay laws passed by the general assembly and the homestead and exemption provisions of the constitution. The debt may have been saved by reducing it to judgment, and the inaction of the defendant in taking any steps to secure the debt is without excuse, and the consequent loss ought to follow his own culpable negligence. This ruling of the court is approved.

Exc. 3. For that the rents charged for 1861 and the two succeeding years are not reduced by applying the legislative scale: By the testator's will his widow had liberty to take a certain tract and allow the defendant to have use of that devised to her. This exchange she elected to make, and her land was rented out with the assent of the older members of the family on such terms and conditions as were deemed necessary to prevent deterioration and impoverishment. The value of the rented premises before the war was $200 per annum, and the defendant received payment in coin equivalent in value to that sum in the currency of the United States. There is no error in refusing the scale.

Exc. 4. For that the receipts and disbursements are scaled at their respective dates, entailing constant loss on the defendant by reason of the continuing and rapid depreciation in confederate money: This exception, except as to the rents, is well taken. To avoid the consequences pointed out, and to correct the inequality in the scaling process, the funds received and paid out should be grouped as nearly as practicable, and the receipts equivalent to the disbursements scaled as of the time of making the latter, and the excess of the former, reduced by the scale independently applied, carried into the general account. This will remedy the evil and leave the scaled value of the excess to bear interest under the general rule. The accounts are not before us, but from a statement in the brief of the plaintiff's counsel

33

of the aggregate receipts and disbursements for the years 1862 and 1863, the referee will be able to make the adjustments upon the principle laid down without serious difficulty, and the large excess of the former, for the year 1864, must be disposed of according to the adjudications heretofore made in regard to the personal responsibility resting upon fiduciaries for confederate money perishing in their hands.

Exc. 5. For that the defendant is not allowed a credit for the scaled value of confederate money unexpended in his hands, and which he says he could not invest and has kept separate and distinct from his own: The defendant is not excused for accepting confederate money at its enormous depreciation during the latter months of the war, in payment at its nominal value for debts contracted at its earlier stages when the depreciation was slight, any more than he is for accepting such in payment of ante-war debts. But so far as the sum he now holds is constituted of rents and hires for 1863 and 1864, due at the end of those years, kept distinct from his own funds, it ought not to be charged against him, because, as a matter of public history, such funds were incapable of any investment which would have prevented the loss, at that date. All that could be then expected of a trustee was the careful preservation of the funds for the benefit and at the hazard of those to whom it equitably belonged.

The rulings of this court render necessary a reference and reformation of the account, and as this can be done with more convenience in the court below, the cause will be remanded for further proceedings in accordance with this opinion, and it is so ordered.

Error.　　　　　　　　　　　Modified and remanded.

In same case upon plaintiffs' appeal:

Smith, C. J. The plaintiffs' appeal brings up for consideration the several rulings of the court by which certain

exceptions taken by them to the account reported from the probate court are disallowed. To these attention will now be directed.

Exception 1. For that the sum of $100 paid to A. McLean and endorsed by his receipt (voucher 17) is improperly allowed: This payment was made for taking and reporting an account in a suit instituted in 1857 in the county court by the defendant and Mary Smith against J. C. Smith, administrator of W. T. Smith for a settlement of the intestate's estate in which more than $12,000 was claimed to be due. The answer admitted a liability for a large amount. The cause was continued till 1867 and then dismissed at the plaintiffs' costs. During its progress the defendant collected about $3,600. The docket shows an order of reference to A. McLean to take the account, but no report is found and no order of the court making an allowance to the referee or directing any payment therefor is entered in the cause. The defendant testifies that the account was taken and reported, but after diligent search cannot be found. The demand for the service rendered was made on him by the referee and paid, and he thinks this was in consequence of an order of the court, though not put in the record. There is no suggestion of bad faith in the transaction, nor of interest or influence to pay a demand which is not due and just, and after the long interval which has since elapsed, covering the confusion and disorders of the civil war and the displacement and loss of judicial records and proceedings, the payment should be assumed to be correct, and was properly allowed. C. C. P., § 480; *Drake* v. *Drake*, 82 N. C., 443. Nor is the charge excessive. *Washington* v. *Emery*, 4 Jones Eq., 32.

Exc. 2. For that $10.25 (voucher 76) was improperly paid to J. C. Callahan, clerk: The costs were incurred in prosecuting an action against Thomas S. Lutterloh to recover $494 due from him to the wards in 1869. Lutterloh is

shown to have been solvent, but the guardian was informed by parties interested in the fund that the debt was doubtful and advised by them to accept certain notes, unquestionably good, offered by Lutterloh in place of his own. The exchange was accordingly made, and the substituted notes have mostly been paid since, and the whole amount is charged against the defendant in the account. As the subject matter of the suit was thus adjusted the suit could not be maintained, and the costs falling on the guardian were rightfully paid by him.

Exc. 3. For that the defendant is not entitled to commissions; and if to any, the allowance is excessive: This exception is sustained by the judge as to so much of the commissions as are allowed on disbursements made after the wards became of full age, and in this ruling we concur. The management of the estate has been conducted over a long series of years and through a period requiring the exercise of great care and diligence, and in our opinion with unusual success. It would be neither equitable nor just to deprive him of all compensation for his services because of his omission to keep and render regular accounts of his administration, when no imputations are cast upon his integrity by reason of the neglect. Nearly all the information upon which the charges against him are founded was obtained from his own testimony delivered upon a long, minute and elaborately exhaustive examination, and with no apparent disposition to withold anything he knew favorable or unfavorable to himself. On information thus obtained the complaint was itself amended. "It is only in case of fraud or very culpable neglect," says RODMAN, J., in *Whitford v. Foy*, 65 N. C., 265, "that a trustee will be punished by being deprived of his commissions.

Exc. 4. The allowance of the charge for board paid for the plaintiff, Campbell, has already been disposed of in the other appeal.

Exc. 5. The claim of the defendant to have a credit for the scaled value of the surplus confederate money in his hands and lost, is also considered and passed on as far as the facts disclosed in the case will permit in the defendant's appeal, and needs no further comment here. The same order for remanding must also be made in this case to the end that the accounts may be reformed and corrected in accordance with the opinion of this court.

Error.                                        Modified and remanded.