J. H. WILSON, JR., and wife v. C. J. LINEBERGER and another.

*Partnership—Sale of Interest of one Partner—Managing Partners—Allowance for Services—Wages of Employees.*

1. Where, in the formation of a partnership among three persons, it was agreed that two of them should give their personal attention to the joint business and receive an allowance for their services of $1,000 each *per annum*, and afterwards the non-active partner sold his interest to another who permitted the business to continue without interruption or any new agreement; *It was held*, that upon the final settlement of the partnership affairs, the two active partners were entitled to the allowance of $1,000 each *per annum*, as upon the original agreement.

2. In such case where the two active partners (to whose discretionary management the entire business of the firm was entrusted) employed a person to attend to certain out-door matters and paid him for his services part of the time at the rate of $700 *per annum,* and part at the rate of $1,000 *per annum*; *Held,* that upon a final settlement, the active partners were entitled to credit for the amounts so paid, although the actual value of the services was only $700 per annum, there being no suggestion that the services were not required or that the employment and allowance were not in good faith.

(*Bank* v. *Fowle*, 4 Jones Eq., 8, cited and approved.)

CIVIL ACTION heard upon exceptions to a referee's report, at Spring Term, 1880, of GASTON Superior Court, before *McKoy, J.*

The defendants appealed from the judgment rendered.

*Messrs. Wilson & Son,* for plaintiffs.
*Messrs. Jones & Johnston,* for defendants.

SMITH, C. J. In March, 1871, a partnership for the manufacture of cotton goods at the Woodlawn mills was formed between the defendants and Lewis Lineberger, wherein the interest of C. J. Lineberger was two-fourths and of the other members one-fourth each. It was agreed among them that the defendants should give their personal attention and alone conduct the joint business and be allowed for their services, at the rate of $1,000 per annum to each.

In July, 1871, Lewis Lineberger, who under the arrangement took no part in the management of the affairs of the firm, sold his interest therein to the feme plaintiff, then unmarried, but the business thereafter as before, without interruption or any new agreement, was continued until July 1874, when it terminated by a sale of the interest of the defendant, Rhyne, and of the feme plaintiff in the partnership to the defendant, C. J. Lineberger. The managing partners finding it necessary employed one J. M. Lineberger, a son of C. J. Lineberger, to oversee and direct the outside

laborers in the service of the company, and paid him a salary at the rate of $700 per annum for the first five months, and for the remaining time of his service at the rate of compensation retained by themselves.

The plaintiffs admit payment for the share of the feme in the land and goods, possessed by the firm at the date of her assignment and sale, and in the action seek only an account of the dealings of the firm, while the feme was a member, in order that her share may be ascertained and paid.

The matters involved were referred, and the referee made his report to spring term, 1879, refused to allow the stipulated compensation for the special personal services of the defendants on the ground that the assignment of the share of the inactive partner to the feme plaintiff operated, *ipso facto*, as a dissolution of the existing co-partnership; and thereafter was in law carried on a new joint business with no agreement as to terms, and in which neither member is entitled to charge for personal services. The referee also disallowed a credit for the sum paid J. M. Lineberger, in excess of $700 per annum, as beyond a fair and reasonable compensation to which he was entitled.

The only exceptions to the report are that the referee refused to allow these credits, and the appeal of the defendants is from the judgment of the court, overruling the exceptions and confirming the report. These it becomes our duty to review:

I. By the assignment of Lewis Lineberger and his withdrawal from the firm, it was dissolved at the election of the assignee or either of the remaining members, and each could have required the business to be settled and the proceeds and property distributed according to their respective shares. This was not done, but the business was prosecuted for nearly three years after the assignment, under no new arrangement, with the acquiescence and assent of the feme

plaintiff and now confirmed by her claim to have become a member in place of her assignor, and to share in the profits of the copartnership made up to the date of its actual dissolution.

This assent must be extended not only to a copartnership, but to *that then formed and operating* with its terms and conditions as previously understood and agreed upon. The assignee, silently but actually, enters the copartnership as an accepted substitute in place of the ret ring member, and succeeds not to his rights only, but to his responsibilities, in the future management of its affairs, and in the final adjustment thereof among the copartners. This is fairly implied from the continuance of the business, with her knowledge and approval, precisely in the manner and by the agency provided in the original constitution of the firm. If the feme plaintiff knew the terms upon which the defendants were devoting their time and energies to the management of the affairs of the copartnership, for the common advantage, while she herself gave them no personal care, as her assignor did not, and if she had no such knowledge and failed to seek information, when it was her duty to inform herself of the terms, and permitted everything to go on as before for a series of years, it would be inequitable to permit her now to reap the fruits of the labors of her copartners, to which she has in no way contributed, and refuse them any compensation for services thus rendered in a reasonable expectation of receiving payment. If she did not intend to recognise the defendants' right to remuneration, it was her duty to communicate to them her intention, and then their further prosecution of the partnership business would have stood upon a different footing, and their demand for compensation, as in the absence of a special provision in the partnership agreement, be perhaps deemed inadmissible upon the authority of the cases cited for the plaintiffs.

The rule governing in cases like the present is thus laid

down by SIR JOHN ROMILLY in *Austin v. Bays*, 24 Beavan, 606, called to our attention in the brief of the defendant's counsel: "There is no doubt that if two partners take in a third partner, without specifying the terms on which he becomes such partner, he has the same rights and is subject to the same liabilities as the original partners. *The terms and conditions of the partnership, which bind them, bind him, unless a new contract be made between them.*" If this principle applies to a partnership increased by the addition of a new member, it applies more forcibly to the relations of one admitted in place of a retiring partner, and whereby the original constitution of the copartnership is maintained as to numbers.

So in *Meaher v. Wilcox*, 37 Ala., 201, WALKER, J., declares the opinion of the court in these words: "After the complainant succeeded to the interest of the persons originally composing the firm of Cox, Brainerd & Co., the defendants recognized and treated them as partners, and continued the business in conjunction with them, under the original agreement. This was quite sufficient to make the complainants partners, and the original articles remained operative as between them and the defendants."

"A person who comes into a firm through another who has acquiesced in a variation of the terms of the partnership articles," says Mr. LINDLEY, "is bound by that acquiescence and cannot revert to the original articles." Lind. Part., 678.

"It is not uncommonly said," remarks the same author, "that shares in partnerships are not transferable without the consent of all the partners, and this is quite correct, if all that is meant is, that the transferee cannot without the consent of transferor's copartners become a partner with them." *Ib.*, 563.

The same principle is recognized in *Bank v. Fowle*, 4 Jones Eq., 8, by BATTLE, J., delivering the opinion of the court, in

this language: "There can be no doubt that the general rule is that an assignment of the interest of one partner in a firm, either absolutely, or as security for a debt, is a dissolution of the copartnership, *if the assignee insist upon his right to have the business closed, and the share of each partner ascertained and paid to him after the payment of all the debts of the copartnership.*" Then, after citing the case of *Marquand* v. *N. Y. Man. Co.*, 17 John., 525, in which the consequences of an assignment of the share of a member as a security for his own debt are discussed, he adds: "But there is nothing either in the decision itself, or in the reasoning by which it is supported, which makes the assignment operate to dissolve the copartnership against the will of the assignee. He may, if he choose, permit the business to go on in its ordinary course; but if he do, his surety will be liable to its fluctuations, by which, if the business be prosperous, his security will be enlarged, but diminished or lost, if it be adverse"

We think it is clear therefore that the plaintiff's acquiescence in the continuance of the business implies an assent to the terms on which it was commenced, and that the defendants are entitled to the compensation promised in the special agreement. The overruling of the exception is erroneous, and the exception is sustained.

II. The appellant's second exception is that they are allowed only a credit at the rate of $700 per annum for the services of J. M. Lineberger during the period when he was paid out of the effects of the firm at the agreed rate of $1,000 per annum: The referee finds upon the evidence, (which is not before us) that the actual value of the services performed by the said J. M. Lineberger was $700 per annum. If the question was simply as to the value of the services, we should not hesitate to sustain the reduction made by the referee. But this is not the aspect in which it is presented. The defendants to whose discretionary management the entire business of the firm was entrusted, in the discharge of

their duties, deem it for the common advantage to employ an assistant for their out-door matters, and both agree upon a fixed compensation to be paid, and which is paid him out of the partnership effects. The person employed was the son of one, but, so far as appears, not related to the other managing partner. Three-fourths parts of the sum paid came out of their shares, one-fourth only from the plaintiff's share. There is no suggestion that these services were not required, or that they were not useful to the firm, or that the employment and allowance of compensation were not in good faith on the part of the defendants. Money derived from the common fund and thus honestly expended ought not to be disallowed, unless clearly excessive and indicating a disregard of, or culpable inattention to the common interest. Unless something of the kind appears or the excess be so great as to excite a reasonable distrust in the integrity of the transaction, the loss should not be shifted from the firm to the managing members, merely because of an underestimate put by others upon the value of the employee's services, and an error in judgment on their part. Nor does the fact of relationship, without other proof, furnish any just ground for imputation upon the measure of the allowance, and for a refusal to allow the charge.

As this seems to be the only reason assigned, and we do not concur in its sufficiency for the reduction made by the referee, we do not think the loss, and it must be borne by the firm or by the defendants, should fall upon the latter. We must therefore sustain this exception also and reverse the overruling judgment of the court upon it. The report must be reformed in these particulars and the plaintiffs will then be entitled to judgment. Unless this can be done by counsel without, there must be a reference to the clerk to make the correction and report the amount due. The cause will be retained for final judgment.

Error. Reversed.