The case is reported in the 92 N.C. 547, and the petition was filed by the plaintiffs.
The petition to re-hear was asked on the following grounds:
"1st. In that the Court erred in deciding that the contract sued on contained mutual and dependent covenants, to be performed by J.H. Wilson and E. C. Wilson, his wife, and that the plaintiff's complaint did not state a cause of action, because it did not allege that said *Page 542 
J.H. Wilson and E. C. Wilson, had performed, or were ready, willing and able to perform, the covenants on their part in said contract; whereas the petitioners allege, that from the face of the said contract, it appears that the covenants to be performed by said J.H. and E. C. Wilson, are entirely distinct and independent from the covenant of the defendant which it is sought to enforce in the action.
"2nd. In that the complaint does allege, with sufficient certainty, the readiness of the plaintiffs to perform their covenant.
"3rd. In that it appears from the record in this action, that the defence was not raised either by demurrer or answer, but that the defendant answered to the merits, whereby the petitioners respectfully suggest, that the defect in the complaint, if any, was aided by the answer, and could not be taken advantage of by the defendant in this Court, for the first time.
(642) "4th. In that the effect of the judgment of this Court, is to prevent the infant plaintiff from enforcing the said contract in this action, whereas it appears from the record, that the said contract contains no covenant on the part of the said infant of any kind whatever, to be performed by him; and it does appear that the covenant in said contract, which this action is instituted to enforce, was made to secure to said E. C. Wilson, in her representative capacity, as administratrix of J.L. Lineberger, the moneys in the hands of the defendant C. J. Lineberger, as co-administrator of said estate, and that said infant is one of the distributees of said estate, and entitled to enforce the said covenant."
The contract was as follows:
"This contract, made this the 24th day of August, A.D. 1874, between J. Harvey Wilson, Jr., for himself and as agent for his wife E. C. Wilson, parties of the first part, and Caleb J. Lineberger, party of the second part, witnesseth: That the said parties of the first part, for the consideration hereinafter mentioned, do hereby covenant, stipulate and agree, to sell unto the said party of the second part, his heirs and assigns, the interest of the said E. C. Wilson in all that tract and parcel of land, lying, situate and being in the county of Gaston, State aforesaid, on the waters of the South Fork of the Catawba River, adjoining the lands of Lee Smith, Mrs. E. C. Wilson, Wesley Stroup and others, and known as the Woodlawn Mills tract of land, containing one thousand (1,000) acres, more or less, including the improvements, machinery and fixtures erected or placed thereon, the interest of the said E. C. Wilson therein, and herein contracted to be conveyed, being one undivided fourth part thereof. *Page 543 
"And the said party of the second part, for and in consideration of the premises, hereby covenants, stipulates and agrees, to and with the said parties of the first part, to pay unto them, the said parties of the first part, at the time of the execution of the conveyance above mentioned, the sum of nine thousand dollars, solvable as follows, to-wit: six thousand dollars at the time of the execution (643) and delivery of the deed of conveyance aforesaid to him, by the said parties of the first part, and the balance, to-wit: the sum of three thousand dollars, to be paid at the expiration of two years from the date of the execution of said deed, with interest thereon from said time, at the rate of eight per centum per annum, interest payable annually, which said sum of three thousand dollars is to be evidenced by the promissory note of said party of the second part, bearing even date with that of the execution of the deed aforesaid, and for the purpose of securing the payment of said indebtedness, the said party of the second part, doth hereby covenant, stipulate and agree, to and with the said parties of the first part, to execute and deliver to them, a mortgage upon all his interest, right and title, in and to the premises above described, with power of sale, in case the said party of the second part, should fail well and truly to pay the said indebtedness at maturity, and the interest thereon as it yearly accrues. And the said parties of the first part, upon the payment of six thousand dollars as aforesaid, by the said party of the second part, and also in compliance with the other stipulations hereinafter set forth, do hereby covenant, stipulate and agree, to and with the said party of the second part, his heirs or assigns, the interest of the said E. C. Wilson in the above described premises, (said interest being one undivided fourth therein as aforesaid,) to convey by deed of bargain and sale in fee simple, with covenants of general warranty and seizin. And it is further the agreement between the parties hereto, that an account of the partnership effects of the firm of Lineberger, Rhyne Co., be taken immediately after the execution of these presents, and that one-fourth of the manufactured goods belonging to said firm, be delivered by the said party of the second part to the said parties of the first part.
"It is the further agreement between the parties hereto, that after taking the account aforesaid, one-fourth of the cotton, as per grade, found on hand belonging to the said firm, be likewise delivered to the said parties of the first part. And it is further (644) the agreement between the parties hereto, that the residue of the personalty belonging to said firm, be divided, and the one-fourth part thereof, in value, be paid over to the said parties of the first *Page 544 
part, within ninety days after the execution of the deed of conveyance by the said parties of the first part as aforesaid, said valuation to be ascertained by reference to an inventory taken between C. J. Lineberger and A. P. Rhyne, upon a settlement had between them in the adjustment of their respective interests in the personal property of said firm of Lineberger, Rhyne Co.
"And it is the further agreement between the parties hereto, that one-fourth in value of the notes, accounts and moneys belonging to the firm of Lineberger, Rhyne Co., be turned over to J. Harvey Wilson, Jr., one-fourth thereof to A. P. Rhyne, and one-half thereof to C. J. Lineberger for collection, and the parties hereto agree to use due diligence in collecting the same, and to meet within ninety days from this date, and upon convenient intervals thereafter, and make statements as to the amounts collected thereon, and a division of the same among the parties so entitled according to their respective interests therein.
"And it is further the agreement of the parties hereto, that C. J. Lineberger, administrator of J.L. Lineberger, is to file his account of the administration of the estate of his intestate, with the Judge of Probate of Gaston County, immediately after the execution of these presents, and at the date of the execution of the deed of conveyance as aforesaid, to turn over to E. C. Wilson, one of the parties of the first part, (who is also his co-administrator upon said estate), all the assets which may have, or should have come into his hands, as administrator aforesaid, and upon filing said account by the said party of the second part, the amount found due the estate of J.L. Lineberger, the said party of the second part, agrees to deliver to the said parties of the first part, his promissory note therefor, payable two years from the date of these presents, secured by a mortgage upon the premises above (645) described, bearing interest at the rate of eight per centum per annum: Provided, nevertheless, that the said parties of the first part, shall execute and deliver to the said party of the second part, a good and substantial bond, in the penal sum of five thousand dollars, conditioned to save the said party of the second part entirely harmless from any and all acts done now or hereafter by the said E. C. Wilson, as the administratrix of the estate of J.L. Lineberger, details to be set forth in said bond.
"It is the agreement of the parties hereto, that the manufactured goods, agreed to be delivered to the said parties of the first part, are to be such only as are manufactured by the firm of Lineberger, Rhyne Co., said goods to be delivered at the date of the execution of the deed of conveyance of the premises above described. *Page 545 
"In testimony whereof, we hereunto set our hands and seals the day and year above written.
 J. HARVEY WILSON, JR., (L.S). E. C. WILSON, (L.S). (By J.H. Wilson, Jr., her Atto. in fact.) C. J. LINEBERGER, (L.S)."
"The terms of the above contract are duplicated and furnished both parties.
"It is further agreed by the party of the second part, that the indemnifying bond referred to in this contract, and to be given to C. J. Lineberger as administrator, shall be acceptable with the names of the parties of the first part signed thereto.
 J.H. WILSON, JR., C. J. LINEBERGER."
The portion of the complaint which the plaintiffs relied on as a substantial allegation of performance of the covenant, was as follows:
"Plaintiff's aver a readiness and willingness to fulfil said contract on their part; by giving the defendant their penal bond for his indemnity, whenever he is ready to perform said contract on (646) his part; and hereby offer to perform any order made by this honorable Court, in that matter."
The answer, after denying that the defendant was liable to account at all, proceeded as follows:
"That the defendant has not turned over the assets of his administration to plaintiff, or given his note, with mortgage, as stipulated for, for the reason that he has since ascertained that there are still claims of considerable amount outstanding against the estate of the intestate. And he has since been sued for more than $5,000.00. That since said agreement was entered into, the plaintiffs have mortgaged all of their estate for more than it is worth, as defendant is informed and believes, and should defendant be forced to pay over to them the amount in his hands, and judgment should be given against him for these claims, the defendant would lose said amounts."
The answer did not contain any allegation that the plaintiffs had not performed their covenants.
The case has been repeatedly before the Court, and is reported in82 N.C. 412; 83 N.C. 524; 84 N.C. 836; 88 N.C. 416, and92 N.C. 547. *Page 546 
The covenant, the specific performance of which, as a means of enforcing a lien upon the real estate described in the pleadings is demanded, embraces two distinct interests, one wholly personal to the contracting parties, the other the trust estate committed to the joint administration of the feme plaintiff and the defendant. The payment of the deferred purchase money for her share in the land sold, is to be secured by the conveyance of the estate of the debtor, thus charged, by a mortgage deed, while the defendant, left in charge of the trust estate of (647) the deceased intestate, J.L. Lineberger, is forthwith to render an account of his administration, execute to his associate, the feme
plaintiff, his note, bearing interest at the rate of eight per cent., payable in two years, and to be secured in like manner by mortgage of the same land. Preliminary to the ascertainment of the sum for which the defendant would be liable, it became necessary to have the partnership settled, whereof the intestate was a member, in order that his portion, as well as what was due under the guardianship committed to the defendant, might be entered as credits upon the administration account proper. The protracted and complicated controversies which had to be, and have been, settled, during the progress of the cause, have grown out of the administrations, and have necessarily delayed the execution of so much of the contract, as related to the ascertaining of the value of the assets of the intestate for distribution to the parties entitled. During this period, the duties common to both, acting as trustees under their joint appointment, have rested upon one, and the funds have not had the joint care and supervision intended. As understood by the plaintiffs, the obligation of the defendant covers the two preliminary, as well as the final accounts to be stated.
Not only does this arrangement comprehend the retirement of the administratrix from the management, with a view to her being absolved from responsibility in the premises, but the mixing up of personal and trust matters in one and the same contract, may possibly lead to antagonism, a result not sanctioned in a Court of equity, and we may repeat what is said in N.C. R. R. Co. v. Wilson, 81 N.C. 223, "The law frowns upon any act on the part of a fiduciary, which places interest in antagonism to duty, ortends to that result."
It is in this aspect of the case, we used the language repeated in the opinion now under review. "We are not prepared to uphold the *Page 547 
contract in this feature, as one entitled to a specific performance, if its validity were now open to question." Such equitable relief is not of positive right, to be demanded, but it is afforded under (648) general rules of equitable action, it is true, in the exercise of a sound discretion, by the Court.
But aside from this, without needless repetition, we adhere to the reasoning pursued in the opinion, and now called in question, upon which the Court refused to decree a specific execution of the contract upon the first hearing of the appeal. Notwithstanding the able and exhaustive argument, and copious learning brought to bear upon the point, our convictions remain unchanged of the effect of the absence of averments necessary in sustaining the present claim, and which are not, because of their essential nature, waived by pleading over, as now contended.
We therefore adhere to our former ruling, and affirm the judgment.
Affirmed.