## Huffer's Appeal.

1. *Semble*, that where a guardian finds money of his ward in hands in which the family and neighbors thought it safe, it is not gross or culpable negligence to leave it there.

2. Where a guardian has money in his hands, which he is expected to retain for a term of years, it is his duty so to invest it, that the interest will be received, at least, annually.

3. If the annual interest received by a guardian is sufficient to meet the payments to be made for his ward, no part of the principal should be used for that purpose.

4. Where money is received by a guardian, a reasonable time should be given for re-investment, and six months is not an unreasonable time for such purpose.

5. The commissions and charges of a guardian may be taken from time to time, as they are earned.

6. Where a guardian has money in his hands for several years, he ought not to be allowed interest on disbursements, if the annual interest is equal to or greater than the disbursements.

7. Interest is due annually, and if a guardian retains money belonging to his ward, instead of investing it, he ought to pay the interest annually.

APPEAL by Abraham Huffer, from the decree of the Orphans' Court of *Franklin county*, confirming the report of J. W. Douglass, Esq., auditor, appointed to report on the exceptions to the final guardianship account of Jacob Brewer, guardian of said Abraham Huffer.

Jacob Brewer, Jr., was appointed guardian of Abraham, in November, 1835. Abraham Huffer, Sr., the grandfather of said ward, died in 1829, leaving a widow, since dead, and seven children. His real estate consisted of a tract of land in Antrim township, containing about 333 acres. Thirty acres of this farm, with a grist and saw mill, and other improvements thereon, were conveyed after the death of A. Huffer, Sr., to Elizabeth, intermarried with Daniel Nisewander, in full of their share, leaving 303 acres 41 perches, for the other six heirs. Abraham Huffer, Jr., the father of this ward, and one of the six children referred to, died sometime previous to November 20, 1835, leaving a widow and four children, to wit: Abraham, Nancy, Susanna, and Sarah, of whom said Brewer was guardian. Abraham Huffer, the ward, at the time this controversy commenced, was over twenty-one years of age. T. B. Kennedy and James Nill, counsel for said Abraham, filed exceptions to the final guardianship account, which was for settlement. The guardian had previously settled two accounts; the first on the 2d of June, 1846, and the second on the 14th of August, 1849. The exceptions to the third and final account, were:—

"1. That said guardian has erred in his calculation of interest, on the balance in his hands, since the filing of his second ac-

count, and should be charged with $43 additional. Also, that the allowance charged in said account is excessive.

"2. That in the second account of said guardian, confirmed on the 14th of August, 1849, he has not charged himself with any interest on the sum of $385.50, in his hands three years from the filing of his first account, and should be charged with $69.30.

"3. That in the first account settled by said guardian, June 2, 1846, there are numerous errors in the calculation of interest. Also, that the said guardian has not charged himself with all the money that was coming to said ward, out of the proceeds of the sale of the real estate of Abraham Huffer, Sr., deceased, sold by Emanual Hade, under a decree of court.

"On these exceptions, the account as stated, sworn to and filed by said accountant, was referred to said auditor for his report thereon. The guardian claimed no interest on his credits in said account. When the parties appeared with counsel and witnesses before the auditor, said accountant, by Mr. Brewer and Mr. Reilly, his attorneys, claimed to have interest allowed on the payments, and the counsel for the exceptant resisted it. After hearing the testimony and arguments of counsel on both sides, the auditor made his report."

In relation to the 3d exception he reported: "The exceptant assigns for error, that the guardian has not charged himself with the amount of the Hade judgment, alleging that it might have been collected if proper energy had been used by the guardian. The following are the facts of the case. Emanual Hade was administrator of the estate of Abraham Huffer, Sr., and sold his real estate to Frederick Sheely, on the 13th of January, 1841, for $6000, one-half of which was paid on the 1st of April, 1841, and the balance in three equal annual payments without interest, the payments secured by a mortgage on the premises. This mortgage was assigned to Jas. X. M'Lanahan, by E. Hade, July 7, 1843. The guardian received different sums of money from E. Hade at different times, the last payment on the 8th of May, 1844. The guardian next obtained a judgment from E. Hade for the balance of the money due his wards for $124.11, on the 26th of February, 1846, No. 158, January Term, 1846; on the 4th of March, 1846, Emanual Hade executed a deed of assignment to Wilson Reilly, Esq., for the benefit of his creditors.

"The auditor relying on *Konigmacher's Appeal*, 1 Penna. R., has not charged the guardian with this judgment. This fund had never passed into the guardian's hands—had never been at his disposal,—was in the hands of a man who enjoyed the confidence of the heirs and his neighbors—his failure was sudden and unexpected—he was not engaged in hazardous or desperate speculations or undertakings. As soon as the guardian per-

ceived any danger, he endeavored to secure the debt—there was no supineness or carelessness on his part.

"True, Mr. Rush told him he had better secure the money, but the general impression was, that he was good. The very same advice was given Konigmacher, in the case above referred to, and the court gave it no weight. In all the cases in which the guardian has been made liable, the money has passed through his hands, and then he is bound to take the best security he can. The court says, 'That where the fund never actually comes into the hands of a guardian, all the cases make a difference,' and further, 'that as he never had possession of the money, and found it in the hands which the family and neighbors thought safe, it was not gross or culpable negligence to leave it there.' In *Stem's Appeal*, 5 Wharton, R. 476, the same points are insisted upon. Hade had paid the guardian the greater part of his indebtedness to the ward's estate; had paid part so late as May 8, 1844. In *Willis's Appeal*, 10 Harris, 325, the guardian is made liable for a debt due the estate, because the administrator of the same estate acted as agent for the guardian, the money having been in the hands of said administrator, and also that the guardian had permitted the debt to continue for eight or more years, without any effort to collect it, from a man engaged notoriously in hazardous speculation, which is in no way analogous to the case under consideration."

That "because the interest accruing annually from the moneys in his (accountant's) hands, will more than meet the moneys paid out by him," no interest should be allowed on the credits.

When the report was returned to court, the counsel for the ward excepted to the confirmation of said report, because said auditor had not charged said guardian with the above sum of $124.11, with interest as stated. And the counsel for accountant excepted to the report, because no interest was allowed on the moneys paid out and credited in the account. The court overruled the exception on part of the ward, and sustained the exception on part of the guardian, and directed the report to be referred back to the auditor, and to be amended by the auditor, by charging interest on the credits; and that when so amended, it should be confirmed. This was done. The auditor credited interest on the payments to the amount of $144.96. The report was confirmed, and from the decree of confirmation, said ward appealed and assigns the same for error.

*Nill* and *Brewer*, for appellant, cited *Price* v. *M'Keeban*, 3 W. & S. 280; *Thompson's Appeal*, 10 Har. 17; *Kirkpatrick* v. *M'Donald*, 1 W. & S. 337; *Roger's Appeal*, 1 Jones, 36; *Spires* v. *Haunt*, 8 W. & S. 17; *Wright* v. *Wood*, 11 H. 120.

*Brewer*, *Reilly* and *Sharpe*, for appellee, cited *Konigmacher's*

[Huffer's Appeal.]

*Appeal,* 1 P. R. 207; *Stem's Appeal,* 5 Wh. 476; *Eyster's Appeal,* 4 H. 376; *Cunningham* v. *Pool,* 9 Ala. 615; *Sayes' Ex'ors* v. *Barnes,* 4 S. & R. 116; *Callaghan* v. *Hall,* 7 Id. 246; *Worrell's Appeal,* 11 H. 50.

The opinion of the court was delivered July 16, 1856, by

KNOX, J.—We do not think that the facts, as reported by the auditor, require that the guardian should be charged with the judgment against Hall. There does not appear to have been that kind of negligence on the part of the guardian, in reference to the collection of this purpart, that would make him personally liable for the amount.

As to the exception in reference to the interest account. Where a guardian has money in his hands, which he is expected to retain for a term of years, it is his duty so to invest the amount that the interest will be received at least annually. And if this annual interest is sufficient to meet the payments which he is required to make for his ward, no part of the principal should be used for that purpose. If the interest exceeds the amount required for current expenses, the excess should be reinvested, and if it is less than the amount required for the ward's support, the deficiency should be taken from the principal. Where money is received by a guardian, a reasonable time should be given for re-investment, and this court has repeatedly held that six months was not an unreasonable time to allow for such purpose. The commissions and charges of a guardian may be taken from time to time as they are earned. Where money is received by a guardian, which remains in his hands for several years, he ought not to be allowed interest on disbursements made by him, if the annual interest is equal to or greater than the disbursements. Interest is due annually, and if a guardian retains money belonging to his ward, instead of investing it, he ought to pay the interest annually.

From what has been said, it follows that the Orphans' Court erred, in allowing the accountant interest on his payments. We are of opinion that the original report of the auditor was as favorable to the accountant as he had any right to expect. The disbursements were unequal to the interest of the fund in the hands of the guardian, and therefore, in equity, should be considered as made from the interest and not from the principal.

*Decree.*—This appeal came on to be heard at Harrisburg, and was argued by counsel, and upon due consideration it was ordered and decreed, that the decree of the Orphans' Court be reversed and set aside, and it is further ordered and decreed that the report of the auditor as first made be confirmed, which report finds the balance in the hands of the accountant, to be $505.94, the costs of this appeal to be paid by the appellee.