## KING v. REA ET AL.

1. OBJECTIONS CONSIDERED ON APPEAL.— An objection that an amended complaint introduced a new cause of action will not be considered on appeal where it does not appear that any objection was made or exception taken to the filing of the amended complaint.
2. PROOF OF AGENCY — INSTRUCTIONS.— In an action on notes alleged to have been executed by A. as agent for defendant, where there is not competent evidence to prove such agency, an instruction withdrawing all testimony in regard thereto cures all errors in the admission of incompetent testimony on that subject.
3. PRINCIPAL AND AGENT.— Where a person with notice that another, assuming to act as his agent without authority in the purchase of real estate, executed and gave in payment therefor the promissory notes of his assumed principal fails to repudiate the transaction but seeks to take advantage of it, he thereby becomes liable to pay the notes.
4. ALTERATION OF PROMISSORY NOTE.— The addition of an X to the signature of a promissory note is an immaterial alteration.
5. INSTRUCTION TO JURY.— Defendant cannot complain of an instruction requested by plaintiffs and modified by the court so as to be more favorable for defendant than is warranted.
6. PRACTICE — DISCRETION OF TRIAL COURT.— After defendant's counsel has challenged plaintiffs' counsel to show why certain testimony is not produced, it is not an abuse of judicial discretion to allow plaintiffs' counsel to explain the absence of the testimony to the jury.

*Appeal from District Court of San Miguel County.*

THIS suit was first brought by appellees against the appellant Isaac King and H. L. King in the county court. Complaint filed October 7, 1884, counting on two promissory notes, each for the sum of $500, bearing date May 14, 1884, payable respectively in three months and seventeen days, and four months and seventeen days, after date, to William Rea or order, with interest at ten per cent. per annum, and purporting to have been executed by appellant and H. L. King. H. L. King was not served, and did not appear.

The answer of appellant is not set out in the record. A trial was had, resulting in a judgment for plaintiffs for $1,000, with interest and costs. The appellant perfected an appeal to the district court. In the district court an amended complaint was filed, counting — *First,* upon the promissory notes; and *second,* alleging that the promissory notes were made and executed by H. L. King as agent for and on behalf of Isaac King; that the consideration of the notes was the purchase of a ranch of one hundred and sixty acres, and the improvements, by H. L. King for the appellant; that appellant, with full knowledge of all the facts of the purchase and the execution and delivery of the notes, about the 15th of June, 1884, entered into the possession and took control of the property, and ratified and adopted the contract and acts of his agent, and afterwards, with full knowledge of all the facts, promised payment of the notes.

Defendant, Isaac King, answered the complaint, denying each allegation, and for a further defense alleged that on May 14, 1884, while he was absent from the state, plaintiffs induced H. L. King to purchase the property and make the notes signed by himself, and with the name of defendant; that H. L. King had no authority to purchase the property or sign the notes on his behalf; that H. L. King so informed plaintiffs at the time of the

transaction; that plaintiffs promised H. L. King to retain possession of the property and notes until defendant returned and was informed of the facts, and that if he did not ratify and confirm the contract it was to be rescinded; that plaintiffs abandoned the possession of the property by delivering the same to H. L. King for defendant before his return, also assigned the notes to William Rea before defendant was informed of the transaction; that as soon as he was informed of the purchase he declined to approve of it, or accept the property; that he refused to recognize or ratify the notes, or pay them; that he has at all times refused to take the property into his possession, and has not at any time entered into the possession and control of it.

For a third defense defendant alleged that after the making and delivery of the notes they were materially altered and changed without his consent. A jury trial was had, and on October 20, 1885, a verdict for plaintiffs was returned for $1,101.65.

The subject-matter of sale and purchase was a one-hundred and sixty acre claim on the public domain, of which plaintiffs had the possession. They also owned the improvements thereon, and some personal property. The purchase was to be consummated by the transfer of plaintiffs' possession to defendant on the return of the latter. Upon being informed of the purchase defendant is reported to have said he did not authorize it, and did not want the property; but he appears to have gone into possession without giving the grantors any notice of the agent's want of authority, and before making any declaration of repudiation.

The following instructions are referred to in the opinion of the court:

12. "Upon the question of ratification you are instructed as follows: When once fully informed of what has been done in his behalf, it is the duty of a principal, if he does not acquiesce in the unauthorized act of his

agent, or in the unauthorized act of one assuming to act as his agent, to repudiate it; and he must dissent, and give notice of such dissent to those to be affected thereby, within a reasonable time, otherwise his silence will be deemed a ratification." .This was given as modified below: "That is, in this case, if you find from the evidence that the defendant, Isaac King, knew of the existence of the notes in this case, and the transactions out of which the same arose, prior to the time when suit was brought thereon, and after such knowledge failed, within a reasonable time, to give notice to the plaintiffs herein that he repudiated the act of H. L. King in causing his (Isaac King's) name to be placed thereon, and that by reason of such silence on his part the plaintiffs were prevented from collecting their debt from H. L. King, or deprived of possession of said ranch, such failure on his part, and such silence, may be taken by you as a ratification, and if you should find that the defendant, Isaac King, did so ratify the acts of H. L. King, then you should find for the plaintiffs."

"13. If from the evidence you find that the defendant, Isaac King, after knowledge of all the facts, either by his silence or by representations and statements made to the plaintiffs, or either of them, wilfully and intentionally intended to mislead the plaintiffs relative to his (Isaac King's) intention of paying the notes herein sued on, and by such silence, representations or statements did in fact mislead the plaintiffs, then you are instructed that the said Isaac King is now precluded and estopped from setting up want of authority on the part of H. L. King to place, or caused to be placed, upon said notes his (Isaac King's) name, and you should therefore find for the plaintiffs.

"14. Alterations which do not in some sense vary the legal effect of a promissory note in no way affect its validity, and you are instructed that the mere addition of an X after the name of Isaac King, upon either or

both of said notes, would no way invalidate the same, and the said Isaac King would be liable thereon to the same extent as though no X had ever been placed upon said notes, or either of them, either at the time of the execution thereof or after the delivery of the same."

The fifteenth instruction requested by defendant was as follows: "The court instructs the jury that it is a rule of law that when an alleged principal does anything towards ratifying an act done in his behalf by an unauthorized person, and the acts of ratification are done in ignorance of, or under a mistake of, any of the material facts affecting the interests of the principal, then the act of ratification will not be binding on the principal; and if the jury believe from the evidence that said Isaac King didn't know fully as to how his name appeared on said note or notes, whether as principal and maker, then any statement made by him will not bind him." This instruction was given with this modification: "If the defendant was informed after the transaction between the plaintiffs and H. L. King, and informed that his name was signed to said notes, then it was his duty to ascertain, within a reasonable time after such information was received, how and in what manner his name was signed thereto; and what constitutes a reasonable time you are the judges from the evidence and attending circumstances."

Following is the sixteenth assignment of error: "That the court erred in permitting plaintiffs' counsel, over objection of defendant, to go outside the record, and explain to the jury why the deposition of one Dr. Enslow was not taken by the plaintiffs."

Messrs. BELL & GOUDY and Mr. C. W. BLACKMER, for appellant.

Mr. W. H. GABBERT, for appellees.

REED, C. There are numerous errors assigned. The first is that the court erred in permitting plaintiffs to

amend their complaint so as to introduce a new cause of action. Whether or not the amended complaint introduced a new cause of action it is unnecessary to determine. It does not appear that any objection was made or exception taken to the filing of the amended complaint; consequently it will not be considered. Several of the assignments may be considered together, as they go to the testimony admitted to establish the agency of H. L. King, his authority to execute and deliver the notes in controversy, and consequently the validity of the notes as against the defendant. That there was not competent evidence sufficient to establish the authority of the agent to execute the notes became apparent to the court in the course of the trial, and by an instruction the court withdrew from the consideration of the jury the testimony in regard to the agency of H. L. King, and placed the right of plaintiffs to recover entirely upon the question of ratification by the defendant. This corrected the errors complained of so far as they could be corrected by the court at that stage of the proceeding, and we cannot say the instruction of the court did not have the full effect intended.

Many of the supposed errors in admitting and rejecting testimony were disposed of by the court in the instruction given to the jury, as they arose upon that branch of the case. There were trivial, technical, but unimportant errors upon the trial, not such as could seriously affect or prejudice defendant, as they were on collateral matters, and not material in determining the question of ratification, and we do not find it necessary to further discuss them.

After the court gave the instruction withdrawing from the jury all testimony in regard to the authority of H. L. King to execute the notes on behalf of defendant, and placed the right of recovery entirely upon the ratification by the defendant, no act of the defendant, or evidence of ratification, could validate the unauthorized act of the

agent in executing the notes, so that a recovery could have been had upon them as notes of the defendant, unless it should be by evidence of adoption and a promise to pay them. The trial could only proceed upon the original consideration for which the notes were attempted to be given, and the notes, being in evidence, could only be considered as to the amount to be paid and the time of the payments. It is true that "ratification has a retrospective effect, and is equivalent to a prior command." Broom, Leg. Max. 866. But in this case it can only be understood as a command to make the purchase at the price fixed, and as to time and terms of payment as they were fixed by the contract.

The questions to be submitted and determined by the jury were: (1) As to the knowledge of the defendant in regard to the transaction as made and entered into on his behalf by his brother, claiming to act as his agent. Whether all the facts necessary to a full understanding came to his knowledge at any time after his return on June 1st, and prior to September 10th. Or, if not fully informed in regard to all the facts, had he not ·sufficient information, and were not the circumstances such as to afford him an opportunity and require him to obtain the necessary information?

The circumstances must have been fully understood by the party before any inference can be drawn from his silence, and they must have been such as not only afforded an opportunity to act or speak, but such as would naturally call for some action from men similarly situated. 1 Greenl. Ev. § 197; *Mining Co. v. Bank*, 1 Colo. 531; Story, Ag. 256; *Corser v. Paul*, 41 N. H. 24.

(2) Did the defendant, as soon as he had knowledge of the facts of the purchase, within a reasonable time disavow the transaction, and place the parties respectively in the same situation they were previous to the purchase? '"If a party does not disavow the acts of his agent as soon as he can after they come to his knowl-

edge, he makes those acts his own." 1 Pars. Cont. 51; *Mining Co. v. Bank, supra;* 1 Greenl. Ev. § 197; *Hortons v. Townes,* 6 Leigh, 47; *Veazie v. Williams,* 8 How. 134; *Benedict v. Smith,* 10 Paige, 126.

(3) Did defendant, when informed of the facts, by failing to disavow and rescind the contract, and by his acts, silence and apparent acquiescence, cause the plaintiffs to change their relation to the property, cause them a loss, prevent the collection of the notes from H. L. King, and estop him (defendant) from denying his liability to pay the consideration of the purchase?

"There is a class of admissions which may be either express or implied from silence or acquiescence which are conclusive. Such are admissions which have been acted upon, or those which have been made to influence the conduct of others, or to derive some advantage to the party, and which, therefore, cannot be denied without a breach of good faith." *Corser v. Paul, supra.* "Where the delay on the part of the principal to disavow the agency will result in loss, and where the transaction may turn out a profit or loss according to circumstances, the principal must disavow the act of the agent within a reasonable time after notice." *Mining Co. v. Bank, supra; Culver v. Ashley,* 1 Amer. Lead. Cas. 719, and note; *Hortons v. Townes, supra.* "If the principal accept, receive and hold the proceeds or beneficial results of such a contract, he will be estopped from denying an original authority or a ratification." 1 Pars. Cont. 50; *Johnson v. Smith,* 21 Conn. 627.

In order to ascertain whether these propositions were properly submitted to the jury an examination of the instructions becomes necessary, and also of the testimony to a certain extent. There is testimony on the part of defendant to show that at the time of the transaction it was agreed that the plaintiffs were to retain the possession of the property and the notes until after the return of defendant, and that the consummation should depend

upon his election. This was partially denied by plaintiffs, but it is conceded that plaintiffs did retain the possession until the 11th day of June; that defendant returned to the vicinity of the ranch, or at least to Montrose, on or prior to June 2d; and that with him came his brother-in-law and family, and perhaps others. The defendant claims, and his witness Goff testifies, that on that day Goff informed the defendant that H. L. King had purchased the ranch for him, and he said he had not authorized Henry King to buy the ranch, and did not want it, but said nothing about paying for it. And that witness afterwards stated these facts to H. H. Rea. As to what, if any, information defendant had at that time, except that given by Goff, we are not informed, but he was informed that the ranch had been purchased for him by Henry King. Here, at least, was sufficient information to put him upon inquiry regarding all the facts of the transaction. There was during that time, from June 2d to 11th, no disavowal or attempted rescission of the contract by the defendant. The parties were still *in statu quo*. The statement made to Goff was no disavowal. It should have been, to be effective, made to H. L. King, or plaintiffs, or both. Up to the 11th of June, according to the testimony of defendant and H. L. King, the contract remained executory. On the 11th it is undisputed that Henry L. King took possession of the ranch in the name of defendant, and for him, by placing in the house the goods or "things" belonging to him (Isaac King), and plaintiffs left the place.

On or about the 18th of June, defendant, Smiley and his family, and two or three male employees and one female employee of defendant, entered into the actual possession and occupancy of the property, and remained in such actual possession at least until some time in October. The testimony in regard to the possession of the property after entry of defendant and Smiley was contradictory. It was attempted on the part of defendant

to show that the entry and possession were those of Smiley, and that he entered upon it as the property of H. L. King; but the weight of the evidence is clearly against it, and the jury were warranted in finding that the entry and possession were those of defendant, and that Smiley entered and held under him. It is evident that plaintiffs delivered the possession under the contract, and not otherwise. The transfer was complete, and the result to them was the absolute loss of the property unless the purchase price was paid. From the time of the arrival of defendant in the state until the 10th of September there is no evidence of disavowal or repudiation by the defendant, except the statement made to Goff on June 2d. On the 10th of September he disavowed the notes; said he had not signed them, nor authorized any one else to, and would not pay them. On that date, as before stated, he and others were in possession of the property, and there is no evidence that he at that time offered, or at any former time had offered, to rescind the contract and redeliver the property.

After a very careful examination of all the instructions given by the court on its own motion, we are of the opinion that they fully embrace and submit to the consideration of the jury all the questions necessary to be determined on the question of ratification.

The twelfth instruction, as asked by the plaintiffs, was a clear, concise and correct statement of the law, and the court would have been warranted in giving it without the modification. As modified, if erroneous, it was more favorable to the defendant than was warranted by the law and the facts. Of this the defendant cannot complain.

We do not think the court erred in modifying the fifteenth instruction asked by defendant, and, even as modified, it is a question whether it should have been given. It was too narrow and limited in its scope, and might have been construed as requiring the jury to attach

too much importance to a matter comparatively unimportant, but the plaintiffs only, if either, could be injured by it.

The thirteenth instruction given for plaintiffs was warranted by the evidence. The conduct of defendant was, to say the least, questionable and misleading. On the 2d of September, when called upon for money, he did not disavow the note; did not refuse to pay it; did not deny his liability. He referred them to H. L. King. On the 6th of September he was again called upon. He did not deny his liability, and, according to testimony of plaintiffs, said he could not pay until he had sold beef cattle, and, when asked in regard to plaintiffs' taking the notes to Montrose and getting money from the bank, wished them not to do so until H. L. King returned from Montrose. On the 10th of September, when again called upon, he for the first time disavowed the notes. During the time from some time prior to the 2d of September, he, according to his own testimony, was buying out and getting possession of all the property of H. L. King, and on the 6th, when he was asking plaintiffs to wait his brother's return, he was on his way to Montrose to close the purchase with and make final payment to him, and knew that he was leaving the country. There was also testimony that he had said he had run H. L. King off. It is evident that defendant was of the opinion that he could not be held liable for the purchase price of the property which he was possessing and enjoying, except through the notes, and that he conspired with his brother to render the collection impossible as against him. Such conduct by one who had long enjoyed, and while enjoying, all the benefits of the transaction could not very favorably appeal to either the court or jury.

We do not think the court erred in its instructions to the jury on the question of ratification, and think the jury were warranted in finding from the evidence that the defendant had ratified the purchase, and was liable for the purchase price.

There was no error in giving the fourteenth instruction asked by plaintiffs. Whether there was a change in the note is left in doubt. If there was, the change was immaterial, and in no way affected the liability of defendant, and the instruction was correct.

We do not think the irregularity complained of in the sixteenth assignment was of very grave importance, as explained by the court over his signature. The defendant's counsel commented upon the absence of the testimony of Dr. Enslow, "and challenged plaintiffs' counsel to state why it was not there." In reply the challenge was accepted, to which defendant objected. To what extent counsel should be allowed to travel out of the record in reply to his adversary was a matter somewhat in the discretion of the court, and we cannot say from the record that the discretion was abused.

It is assigned for error that the court permitted the jury to take the promissory notes and the pleadings with them when they retired. There is no record of an objection or an exception. This court cannot review alleged irregularities that were apparently waived or consented to. It follows from what has been said that the court did not err in refusing a new trial. The judgment should be affirmed.

RICHMOND and PATTISON, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*