[No. 3818.]

In re Estate of Thomas, Cole, Conservator, Appellant.

1. Practice—Evidence—Error Cured.
Error committed in excluding competent evidence is cured by admitting the evidence later in the trial.

2. Evidence—Compensation of Conservator.
In determining the value of the services of a conservator of the estate of a lunatic with a view of fixing his compensation, evidence that the conservator had neglected his own business in the performance of his duties as conservator, and as to what his time was worth to him in caring for his own affairs, was immaterial and properly excluded.

3. Evidence—Corroborative—Exclusion—Harmless Error.
The exclusion of evidence that is merely corroborative, and where the evidence is uncontradicted, if error at all, is harmless.

4. Practice—Pleading.
A party will not be permitted to successfully attack the pleadings of his adversary if the objections are first raised on appeal or by motion for a new trial, after a trial upon the merits, unless the pleadings are so radically defective that they will not support the judgment.

5. Estate of Lunatic — Objections to Conservator's Report — Practice.
Although objections filed to the report of a conservator of the estate of a lunatic are very general and should have been required to be made more specific if motion for that purpose had been made in apt time, yet, if they in a general way inform the conservator of the issues raised and are broad enough to include items which could have been particularized, and it appears the issues which the conservator was entitled to have considered were submitted to the jury under proper instructions, and were as fully considered as they would have been had the exceptions been more specific, they are sufficient to sustain the verdict and judgment if warranted by the evidence.

6. SAME.

The county court has inherent power to appoint counsel to contest the report of a conservator of the estate of a lunatic.

7. PRACTICE—IMPROPER ARGUMENT—OBJECTIONS.

Improper arguments of counsel will not be considered on appeal, except in extreme cases, unless opposing counsel called the attention of the trial court to the objectionable argument at the time and requested that the jury be instructed to disregard the improper statements.

8. PRACTICE—INSTRUCTIONS—WAIVER.

Upon the trial of the issues raised by exceptions to the report of a conservator of the estate of a lunatic, where the exceptions were with the knowledge of the conservator and without objection submitted to the jury, and were included *haec verba* in the instructions, but no objection was made or exception taken at the time, assignments of error based upon these facts are not available on review.

9. ESTATE OF LUNATIC—DUTY OF CONSERVATOR TO INVEST—INTEREST.

It is the duty of the conservator of the estate of a lunatic to exercise reasonable care and diligence in investing the funds which come into his hands as such, in excess of the amount necessary to meet the expenditures on behalf of the estate which he might be called upon to make, and failing to do so, he is liable to the estate for legal interest on the amount he could have invested, unless he can show a legal excuse for his failure.

10. SAME—REASONABLE TIME.

The conservator of the estate of a lunatic is allowed a reasonable time after receiving the ward's funds to invest them, which in the absence of any proof on the question, is usually placed at six months.

11. SAME—EXCUSE FOR FAILURE TO INVEST.

That a conservator of the estate of a lunatic was privately advised by the county judge having jurisdiction of the estate not to invest the money, was not a legal excuse for his failure, that would relieve him from liability for interest.

12. SAME.

The fact that applications were made from time to time on behalf of a lunatic to have him declared sane and placed in control of his affairs will not excuse the conservator of his estate for his failure to invest the fund so as to relieve him from liability for interest.

13. ESTATE OF LUNATIC—INTEREST.

Where a conservator has funds in his hands and makes no investments, and it is necessary from time to time to pay out sums for the benefit of the ward, no inflexible rule can be laid down applicable to every case as to what proportion of the funds interest shall be charged upon, but the conservator of the estate of a lunatic who had funds in his hands which he failed to invest and on which he was liable for legal interest, and who filed a succession of reports

showing the balance in his hands, after deducting all expenditures, cannot complain that the jury in computing interest made their computation on each successive balance between the time of its filing and the time of the last preceding report.

14. Same—Mingling Funds.

Where the conservator of the estate of a lunatic mingles the funds of the estate with his own, that fact of itself renders him liable to the estate for interest, although he may at all times have on hand a sufficient amount to pay the balance belonging to the estate.

15. Estate of Lunatic—Report of Conservator—Attorney's Fees —Evidence.

Where the report of a conservator of a lunatic was contested and one charge was for an attorney's fee, and the only evidence in support of the charge was the testimony of the conservator that he employed the attorney and paid him the amount, but no evidence was offered as to the nature or value of the services, the jury was justified in refusing to allow the charge.

16. Estate of Lunatic—Compensation of Conservator.

The conservator of the estate of a lunatic is entitled to such compensation for his services as the court may deem reasonable, not to be computed as commissions, but to be determined by the reasonable value of the time necessarily devoted to the discharge of his duties. Where the trouble of the conservator in obtaining the funds is merely nominal and he fails to do his duty with respect to the estate, he is not entitled to compensation for handling the funds.

17. Estate of Lunatic—Reports of Conservator—Res Judicata.

Where the conservator of the estate of a lunatic from time to time filed with the county court reports of his actions and expenditures, which were approved by the court, the approved reports were not *res judicata*, but only *prima facie* evidence of their correctness, and might be rectified or rebutted on final accounting.

18. Estate of Lunatic—Removal of Conservator.

The court having jurisdiction of the estate of a lunatic is vested with large discretion in the removal of a conservator, and may do so for any fault or misconduct upon his part. An order requiring a conservator to pay the fund into court has the effect of discharging him.

*Appeal from the District Court of Arapahoe County.*

Appellant, as conservator of the estate of James Thomas, a lunatic, filed his report in the county court of Arapahoe county, to which exceptions were interposed. On the trial of the issues thus formed, the conservator was adjudged to be indebted to the estate in the sum of $2,958.89, and ordered

to pay the same into court within a specified time, from which judgment he appealed to the district court, where, on trial *de novo* before a jury, a verdict was returned, finding the balance due from him to the estate to be $2,754.05. From a judgment for this amount, and order that he pay it into court within a time mentioned, he prosecutes this appeal.

Mr. GEORGE W. MILLER and Mr. DANIEL SAYER (Mr. C. M. BICE of counsel) for appellant.

Mr. H. VAUGHN and Mr. W. W. COVER, for appellee.

MR. JUSTICE GABBERT delivered the opinion of the court.

Appellant was appointed conservator of the estate of James Thomas, a lunatic, by the county court of Arapahoe county, November 23, 1888. For each of the years 1890, 1891, 1892, 1893 and 1894, he filed reports showing his receipts and disbursements, and on July 27, 1896, filed the report upon which the proceedings in the court below were had, from which it appears, after taking credit for disbursements allowed on previous reports, amount disbursed between date of the report preceding this, and claims for compensation, the estate was indebted to him in the sum of $1,953.89. The county court had directed the conservator to pay his ward weekly the sum of $5.00 for his support. The exceptions to the report, in substance, were (1) that it made no allowance for interest on money coming into the hands of conservator belonging to the estate; and (2) that none of the charges were valid or proper, except the weekly allowance and such other items as had been paid under orders of the court.

At the trial in the court below the only evidence introduced was on behalf of appellant, the evidence for the estate being confined to that elicited on cross-examination. On the proceedings had in the district court, numerous errors are assigned by appellant, but only those argued will be noticed, and as near as may be, in the order presented in the brief of his counsel.

VOL. XXVI—8

In his report, to which the exceptions were directed, the conservator, outside of specific items charged, asks to be allowed as compensation for the care of his ward, for a period embracing seven years, seven months and twenty-four days, $300 per annum, amounting in all to the sum of $2,295; also, commissions on the money received; and the first point made by his counsel is that the court erred in refusing to allow him to testify relative to the value of such services, the time consumed in ascertaining what property belonged to the estate, and in looking after his ward individually, in addition to specific charges for this last item; whether or not he neglected his own business in the performance of these duties, what his time in his business was worth, when engaged in attending to that of conservator, and if it was neglected by reason of being compelled to look after his ward. It was proper that the conservator be permitted to testify in his own behalf regarding the value of services performed in caring for his ward, but the error of the court, in not permitting him to do so in the first instance was subsequently cured by the reception of his evidence relative to the value of these services, so that the error committed was rendered harmless, and without prejudice. Appellant, in his report, made no claim for services performed, or time spent, in determining what property belonged to the estate, unless embraced in the item "commissions," and although in the first instance, he was not permitted to testify regarding the time consumed in ascertaining what property belonged to his ward, he was later, so that error cannot be predicated on the first ruling of the court on this subject, and that he may have neglected his own business in the performance of his duties as conservator, or what his time was worth to him in caring for his own affairs, was wholly immaterial, for the value of his services as conservator could not be measured or determined in that way; and it was not error to exclude evidence on these subjects. Under this head it is also contended that similar testimony sought to be introduced by witnesses called on behalf of appellant for that purpose was also excluded. No witnesses

testified except those called by appellant, and even though the testimony of some of them regarding the value of the services rendered by the conservator as such was excluded, that of others on this subject was admitted, and the error of the court in this respect, if it was such, certainly did not prejudice appellant, for no testimony offered by him on this question was directly refuted, and the exclusion of the testimony of such witnesses on the other questions under consideration was proper, for the reasons already given.

The next point urged by counsel for appellant is that the court erred in allowing evidence to be elicited on cross-examination touching the question of how and where appellant kept the funds of his ward, how he cared for him individually, or regarding his failure to account for interest, or on the subject of the waste or mismanagement of the estate, for the reason that the exceptions filed were insufficient to permit any inquiry on these subjects, and for the further reason that it does not appear that they were made in the name of the proper party in interest, or exhibited in proper form any cause of action against the conservator. An attack upon a pleading made for the first time in this court is not regarded with favor (*Insurance Co. v. Bonner*, 24 Colo. 220), and when so attacked will be upheld if it is possible to do so. The sufficiency of the exceptions was not challenged in either court below previous to trial, and although in the district court on motion for a new trial, the question of their sufficiency may be said to have been raised, the same rule with regard to pleadings so challenged for the first time also obtains, for a party should not be permitted to successfully attack the pleadings of his adversary after a trial upon the merits, unless so radically defective they will not support the judgment rendered. There does not seem to be any special statute regarding the filing of exceptions to the report of a conservator, but conceding, as a matter of practice, they should be, when objections are made to such report, then, although those filed in this case were very general, and a motion to make more specific, if interposed in apt time, should have been sustained,

yet in their present form the conservator was advised that a claim would be made on behalf of the estate for interest on the funds which he had received. The court in its instructions advised the jury under what state of facts he would be liable for interest. By the exceptions he was also informed that all his charges against the fund in his hands would be contested, except those items which he had paid under order of court, and on this subject the court directed the jury to allow him credit for all sums he may have disbursed in legitimately and fairly administering on the affairs of the estate, and such amounts as he may have paid by order of the court previously obtained, or through the advice of the court, informally made; and also give him credit for the value of the services rendered in the discharge of his duties; and without being understood as directly approving of the instructions given, it appears that notwithstanding the indefinite character of the exceptions, the issues which he was entitled to have determined were as fully considered as though the exceptions had been more specific than they were; and as they were broad enough, in a general way, to include items which could have been particularized, so as to embrace such as were contemplated by the instructions given, he was not prejudiced by their want of particularity; and as no attempt to prove waste or mismanagement of the estate, except so far as it relates to the failure of the conservator to invest the funds for the benefit of his ward, they are sufficient to sustain the verdict and judgment rendered, if warranted by the evidence. The exceptions purport to have been filed by counsel for the estate acting under a special appointment as such. It was the duty of the county court, on the incoming of the report, if it appeared to contain items which should have been investigated and explained, to take the necessary steps to that end. The counsel appointed conducted the proceedings both in the county and district courts. No objection to his appearance or the capacity in which he appeared was made in either of the courts below. There is no specific method provided by statute regarding the practice in such cases, and the county

court, charged with the duty of protecting estates of which it has obtained jurisdiction, in view of the fact that a large claim was made by the conservator, in the absence of a statute to the contrary, only exercised that inherent power with which it is clothed in such matters, by appointing some one to specially guard the interests of the estate.

The point is also made that counsel representing the estate made improper statements in his argument to the jury. These statements are incorporated in the record, and are to the effect that the judge of the county court had found against the conservator in the sum of $3,000, and that they, the jury, should do as he did, "charge him interest, but allow him nothing, because he has not done right in this thing." What judgment the county court may have rendered was wholly immaterial. The jury were to reach their conclusion from the evidence introduced before them, without respect to that reached by the county court from the evidence which it considered, and it was improper for counsel on behalf of the estate to make the statements he did regarding these matters. Trial judges should exercise considerable care in confining the argument of counsel within legitimate bounds, and not permit them to travel outside the record, or inject into their argument immaterial matters; but except in extreme cases, their failure to do so will not be considered on appeal, in the absence of any steps on the part of opposing counsel to promptly call the attention of the court to improper statements and arguments made in addressing the jury; and as it does not appear that counsel for appellant made any effort to have the court check counsel for the estate in his address to the jury, or direct them to disregard the improper statements made, in view of the evidence as a whole, which will be noticed later, they are not such as would warrant a reversal on account of such remarks. *D. & R. G. Ry. Co. v. Nye*, 9 Colo. App. 94.

Counsel for appellant contend that the court erred in submitting to the jury the exceptions to the report of the conservator, and also that the instructions given are erroneous.

So far as advised by the record, it does not appear that the exceptions to the report were taken or considered by the jury, but if they were, with the knowledge of appellant, then, in the absence of an objection and exception to the jury tak-ing them, an irregularity of this character is waived, and can-not be reviewed on appeal. *King v. Rea*, 13 Colo. 69. In the instructions the court included the exceptions to the report *haec verba*, but no objections were interposed or ex-ceptions taken to them when given, without which, assign-ments of error based upon them are not available on review. *Layton v. Kirkendall*, 20 Colo. 236; *Pike et al. v. Sutton et al.*, 21 Colo. 84; *Mollie Gibson C. M. & M. Co. v. Sum-mers*, 5 Colo. App. 328; *McFeters v. Pierson*, 15 Colo. 201.

The most important questions in the case, and those which go to the real merits, are embraced in the assignments of error under which counsel for appellant contend that the con-servator should not have been charged with interest; that he should have received credit for attorneys' fees paid by him, which were disallowed, and that he was entitled to compen-sation over and above the amount allowed. A consideration of these questions necessitates a review of the evidence.

It appears from his reports that the fund over which this controversy arises, came into his hands in 1889, $4,560 of the amount on March 30, and $146.50 on April 15, of that year. The larger sum, it seems, was in a safety deposit vault at the time of his appointment, and the other received in the shape of a draft. He was directed by order of the court, duly en-tered, to pay his ward $5.00 per week for his support. He never made any investment of these funds, nor attempted to, and excuses his failure to do so for the reason that he had been told that it was his duty to keep them on hand, to turn over promptly in the event his ward should be declared sane. Apparently this advice or direction was given by the then judge of the county court of Arapahoe county. From time to time efforts were made by the ward, or others who inter-ested themselves in his behalf, to have him declared sane. The conservator states emphatically that he never used any

of these funds in his own business, but except for a short period they were evidently mingled with his own, although the evidence regarding the time they were kept separate and apart from his is indefinite.

Beginning with the 18th day of January, 1890, the conservator filed his reports with the county court from time to time, which were approved. According to these reports, his disbursements were for board of his ward, expense of bringing him from Canada, where he was at the time appellant was appointed conservator, attorneys' fees, services performed in looking after property claimed to have been stolen by his ward, and expenses incident, clothing, claims against the estate, court costs, in some instances cash, but for what purpose not stated, and other minor items.

The record discloses the filing of another report, which is not copied in detail, and which appears to have been filed July 15, 1895. In this report the expenditures are stated to be $170.50, for which proper vouchers appear to have been exhibited. From his reports it appears that after making the disbursements mentioned on behalf of the estate, he had in his hands the following balances at the dates indicated: January 18, 1890, $3,736; September 15, 1891, $2,996; December 28, 1892, $2,466.40; August 12, 1893, $2,296.40; January 21, 1895, $1,735; July 15, 1895, $1,564; and July 27, 1896, $1,053.50.

It also appears from these reports that he credited himself with $100 for services performed, and another item of like sum for services, attorneys' fees, railroad fare and other incidental expenses, but how much for each is not stated. The cash credits not itemized, amount to $190.

The next report made is the one to which exceptions were filed and trial had thereon, and embraces the period between July 15, 1895, and July 16, 1896. In that the conservator credits himself with having paid $250 for attorneys' fees, for legal services rendered subsequent to January 12, 1893, and requests an allowance for services performed in looking after his ward, his affairs and attending court, in the sum of $128,

which is carefully itemized, and includes the period beginning November 3, 1893, and ending August 2, 1895. Also, for services rendered between November 23, 1888, and March 30, 1889, for time and labor in corresponding and securing release of Thomas from the asylum at Hamilton, Ontario, and in caring for him after his return, in the sum of $100. In this report he also makes the claim of $2,295, as compensation for the care of his ward from November 23, 1888 to July 16, 1896, and likewise asks for commissions on the moneys collected in the sum of $282.39, and $180 for sixty days' attendance in court (dates not given), since the date of his appointment.

The jury returned a general and special verdict. By the latter it appears that they charged the conservator with $1,530.05 interest, and allowed him credit for all sums disbursed, and charges made, as per his reports filed prior to that of July 15, 1895, but appear to have overlooked the disbursements mentioned in that report. Of the disbursements made, and claims for credit and allowance, in the report to which the exceptions were filed, the jury allowed the sum of $511, and rejected the following items: attorneys' fees, $250; compensation of conservator, $2,295; attendance on probate court, $180; commissions, $282.39, and charging him with the balance of $1,224, principal, returned their verdict in the sum of $2,754.05.

The duties of the conservator of the estate of a lunatic require him to exercise reasonable care and diligence in investing the funds which come into his hands as such, the reason for this rule being that he is not required to collect such funds for the purpose of turning them over to those entitled thereto, like an administrator, but to invest them in a safe and permanent manner, with the view of deriving an income for the benefit of his ward, so that the principal may not be unnecessarily depleted for his support, and if any of these duties are neglected, the loss must fall on the conservator, and not on the *cestui que trust.* *Boynton v. Dyer*, 18 Pick. 1. There is no statute in this state specifically directing what the

duties of a conservator are with respect to the investment of funds, although it is claimed by counsel for appellant there is, and that he is not chargeable with interest because he was not directed by the county court to make such investment; and in support of this position, cites 1 Mills' Ann. Stats. secs. 2094–2095. These sections are permissive only with respect to the character of the investments which a conservator may make with the approval of the court, and do not prohibit investments in other securities, or exempt the conservator for failure to invest, unless directed by the court to do so in advance. The liability of the conservator for failure to invest the trust funds, in the absence of specific statute, should not depend primarily upon obtaining an order to make an investment, because if it did, the temptation would ever be present to neglect obtaining it, and as we have no complete code regulating the duties of conservators, then, except as modified by statute, the common law in regard to the duties and liabilities of a trustee, like a conservator, must govern in this state. *Bond v. Lockwood*, 33 Ill. 212. It was the duty of the appellant to exercise reasonable care and diligence in investing, from time to time, such portion of the trust funds in his hands as could be utilized for that purpose, and still leave him with sufficient to meet the expenditures on behalf of the estate which he might be called upon to make; and having failed to do so, he is, unless he has presented a valid excuse, chargeable with legal interest on the funds which he could have invested (*In re Guardianship of Thurston*, 57 Wis. 104; *Owen v. Peebles*, 42 Ala. 338; 9 Ency. Law, 119; *Hughes' Appeal*, 53 Pa. St. 500; *Boynton v. Dyer, supra; Wilson v. Lineberger*, 88 N. C. 418), or, as it has sometimes been expressed, he should have exercised the same care and prudence in managing his ward's affairs that a prudent man would his own (*Hughes' Appeal, supra; Boynton v. Dyer, supra*); and the funds having remained in his hands unemployed, it was incumbent upon him to excuse his failure to invest (*Wilson v. Lineberger, supra; Owen v. Peebles, supra*), with this modification, that the conservator is allowed a reasonable time

after receiving the ward's funds, within which to invest them, which, in the absence of any proof on the question, is usually placed at six months (9 Ency. Law, *supra; Bond v. Lockwood, supra; Armstrong's Heirs v. Walkup*, 12 Grat. (Va.) 608; *Worrell's Appeal*, 23 Pa. St. 44; *Karr's Adms. v. Karr*, 6 Dana (Ky.), 3; *White v. Parker*, 8 Barbour, 48; *Boynton v. Dyer, supra;* Schouler's Domestic Relations, § 354; *Huffer's Appeal*, 2 Grant (Pa.), 341) so that the next question to determine is, whether or not he has presented any sufficient excuse for failure to invest.

The advice or direction which appellant claims to have obtained with reference to the investment of the funds in his hands does not appear to have been given in pursuance of any application to the court upon his part, relative to investments, nor does he claim that it was. It is not the duty of an incumbent of a judicial position to advise parties to any action regarding their rights or duties, or make any orders in relation to them, except when the matter calling for an order is presented to him in his official capacity, and mere advice or suggestions upon his part regarding matters which are not before him for consideration, and in which he does not assume to act judicially, are no protection to those who choose to rely upon them; and inasmuch as it appears that whatever the conservator may have been told by the judge of the county court, which had jurisdiction of the estate, was merely gratuitous advice, it can only be treated as the views of the judge in his private capacity, and cannot be regarded as an order of court, because if any other rule should obtain, it would lead to confusion, and present temptation to litigants or parties interested in proceedings before a court, to shield themselves behind directions of the kind alleged to have been given in this case, under claim that they were orders, and instead of a record entry, the rights of parties would be dependent upon memory.

The fact that applications were made from time to time on behalf of Thomas, to be adjudged sane, and again placed in control of his affairs, was no reason why the conservator

should not have pursued the usual course with reference to his trust. Experience teaches us that such applications on behalf of those adjudged insane are not infrequent; and if his ward at any time had been restored to reason, and the court had directed the conservator to turn over the property in his hands, he would have been relieved *pro tanto* from any responsibility or liability by turning over securities which he had exercised reasonable care and diligence in procuring for the estate. No excuse offered by the conservator was sufficient to relieve him from liability to pay interest, and the next question presented is, upon what portion of the funds should interest be charged.

It appears from the reports filed that appellant has at all times had in his hands a considerable sum of money which could have been invested. He has presented no excuse for his failure to invest it. The authorities agree that where a conservator has failed to do his duty with respect to investments, and has unnecessarily permitted the funds to remain idle, he shall be charged with the legal rate of interest; but where no investments have been made at all, and it was necessary to pay out sums from time to time, for the benefit of the estate and the support of the ward, no inflexible rule can be laid down which would be applicable in all cases for the purpose of determining upon what portion of the funds interest should be charged, and each case must, in a measure, be governed by its own particular circumstances, and a sound discretion exercised in determining how interest shall be computed in such cases. *In re Guardianship of Thurston,* *supra.* The jury seem to have computed interest on the respective balances in the hands of the conservator at the filing of each report, for the time between such filing and the next preceding; so that he was not charged with any interest upon funds which he disbursed during these respective periods, nor is the interest compounded. Appellant certainly cannot complain that he has been charged interest upon a greater amount of principal than is proper, but it appears that the jury, in making these computations, following the

plan adopted, have made an error amounting to $122.38. It also appears that they have omitted to credit appellant with the disbursements mentioned in the report filed July 15, 1895, and have also charged him with interest from the date the funds first came into his hands, when he should have been allowed a reasonable time within which to make the first investment, and in the absence of any proof on this question, no interest should have been computed for the first six months succeeding the date of his receipt of moneys belonging to the estate.

· Under practically undisputed facts in this case, appellant, for another reason, is chargeable with interest upon these funds. Except for a short period, he mingled them with his own. Conceding for the sake of the argument, that the excuses he offers for not having invested them should relieve him from the consequences of such failure, yet this would not warrant him mingling them with his, for that act alone, where it appears that the mingled funds are used indiscriminately, renders him liable for interest, of itself (*Estate of Widdoes*, 17 Phila. 477; *Stumph v. Pfeiffer*, 58 Ind. 472; Schouler's Domestic Relations, *supra*); nor would the fact that he may have had on hand at all times an amount sufficient of the funds so mingled to pay the balance belonging to the estate, have relieved him from such liability. *The Boston & C. S. Co. v. Reed*, 23 Colo. 523; *Stark v. Gamble*, 43 N. H. 465.

By the special verdict it appears appellant was not credited with the disbursement of attorneys' fees to the amount of $250. His own evidence with regard to the rendition of these services was somewhat meager; there was no attempt to prove what the services actually rendered were worth; and his bare statement, that it was necessary to employ counsel, and that he had done so, and paid him a certain sum, was no evidence from which the jury could determine what sum should be allowed on this account, because, conceding that such services were rendered and necessary, there was absent the important element regarding their value, without

which no conclusion could be reached as to the amount
which should be allowed, except by mere guess; and it was
certainly necessary that the evidence on this subject should
be such that a finding making an allowance therefor should
be based upon evidence supporting it.

The conservator of the estate of a lunatic is entitled to
receive such compensation for his care and trouble as the
court may deem reasonable. Mills' Ann. Stats. sec. 3953.
It is not to be computed as commissions, but determined by
the reasonable value of the time which he has necessarily de-
voted to the discharge of his duties. His trouble in obtain-
ing the funds he did was merely nominal, and having failed
to do his duty with respect to the estate, he was not entitled
to compensation for handling them. *Bond v. Lockwood, su-
pra;* 9 Ency. Law, 147. He was not the guardian of the per-
son of his ward, but in the absence of some one upon whom
this duty devolved, it was eminently proper he should give
him some attention. It was the peculiar province of the
jury who heard the evidence in this case to determine what
sum should be allowed the conservator for his services; they
did allow him in full for all items except that for attending
on court, which he put in as embracing a period of sixty days,
without specifying dates; the commissions, and the item of
$300 per annum; they were the judges of the credibility of
the witnesses; had the advantage of seeing and hearing them
testify; and as they appear to have allowed him every dollar
for services which he claimed to have rendered, which he
was able to itemize and testify definitely in relation to, we
cannot say that their rejection of the items of which appellant
complains was not fully warranted by the evidence in the
case.

It is also contended on behalf of appellant, that the court
erred in submitting the question of the compensation of the
conservator to a jury; that the reports filed and approved
were *res judicata,* and, therefore, conclusive of the condition
of the accounts between the conservator and his ward for the
periods covered by such reports, and that judgment should

not have been rendered, directing the conservator to pay into court the amount found due from him to the estate.

Neither party could demand that the matters in controversy be submitted to a jury as a matter of right, but the court, in the exercise of its discretion, could call a jury to its aid, and submit to them certain questions, whose verdict would be merely advisory, and that was all that was done in this case. In the absence of a statute to the contrary, periodical or partial settlements, as evidenced by reports of conservators, are at most, after approval by the court, but *prima facie* evidence of their correctness, and may be rectified or rebutted on a final accounting; they are not settlements, but only the exhibition of accounts; nor judgments, being merely *ex parte* presentations of the *status* of the estate in the hands of the conservator. 2 Woerner, § 504; 9 Ency. Law, 143; *State v. Jones*, 89 Mo. 470; *Bennett v. Hanifin*, 87 Ill. 31; *Austin v. Lamar*, 23 Miss. 189; *Bond v. Lockwood, supra.* The court having jurisdiction is vested with a large discretion in the removal of conservators, and may do so for any default or misconduct upon his part (Mills' Ann. Stats. sec. 2954; *Snavely v. Harkrader*, 29 Grat. (Va.) 112), and this discretion will not be interfered with, except in plain cases of abuse. The effect of requiring the conservator to pay the fund into court is to discharge him, and we think the evidence regarding his management of the affairs of the estate sufficient to warrant such discharge.

This disposes of all the questions raised on behalf of the conservator, and it only remains to direct what judgment shall be entered. For errors and omissions the account must be restated, and in so doing, the judgment of the jury, with respect to the balances upon which interest should be computed has been followed, except it has only been computed on the first balance for the period beginning six months from the date when the funds came into the conservator's hands; and after crediting him with the disbursements made per his report of July 15, 1895, correcting the errors in the computation of interest and making the change made necessary by

now allowing the credit of the disbursements omitted, we find that the judgment should have been rendered against the conservator in the sum of $2,303.37, and as thus modified, the judgment and decree of the district court will stand affirmed and the cause remanded, with directions to enter judgment for the sum herein specified, to have the same force and effect as though rendered on the date the original judgment was entered.   The costs in this court will be equally divided between the parties.

*Modified and affirmed.*