[No. 5545.]

AMERICAN BONDING COMPANY v. THE PEOPLE EX REL.

1. **Guardian's Bond—Liability of Surety**—As a general rule, sureties on a guardian's bond are responsible only for what actually comes into the guardian's hands during the term covered by the bond.—(397)

2. **Periodical Settlements of Guardians**—The periodical accounts of a guardian are, after approval by the court, but prima facie evidence of their own correctness, and may be revised upon the final accounting.—(397)

3. **Guardian's Final Account—Effect**—Under § 4728, Mills' Stats., the guardian's discharge terminates the guardianship, as to the guardian, and the final account, when approved by the court, is a judgment conclusive upon the guardian and the sureties on his bond, unless impeached for fraud, or such other cause as would invalidate any other judgment.—(399)

4. **Guardian—Loans By**—A guardian, in loaning the moneys of his ward, must strictly comply with the requirements of the statute.—(400)

*Appeal from Teller District Court*—Hon. LOUIS CUNNINGHAM, Judge.

Messrs. PEETE & ABRAHAM, for appellant.

Mr. L. C. CAMPBELL, and Mr. ROBERT GRAHAM, for appellees.

Mr. JUSTICE WHITE delivered the opinion of the court:

The appellant was surety on a bond given by Florence Kennedy as guardian of June Kennedy, a minor. Said Florence was duly appointed such guardian on December 20, 1900, by the county court of Teller county. January 27, 1902, she filed, and

had approved, a report which showed in her hands December 20, 1900, $3,000 cash and twelve several items of interest subsequently collected from the firm of Kennedy & Arnold, aggregating the sum of $360.00. It also showed certain items paid out, leaving balance due ward of $3,131.75. Said Florence resigned her guardianship, and such resignation was accepted by an order of the court, which also directed and commanded her to pay and turn over to her successor all moneys and property that had come into her possession, as such guardian, belonging to said minor.

On the date of her resignation, she presented therewith a report purporting to cover her acts and doings as such guardian from December 20, 1901, to April 20, 1902. This report, received in evidence without objection, included as "items of receipt December 20, 1901, amount due ward as shown by report filed January 27, 1902, $3,131.75; interest on same to April 20, 1902, at 12% per annum, $125.27," or a total of $3,257.02. Under "items paid out" she credited herself with $25.95, and stated that at the beginning of her trust she received the sum of $3,000.00 for her ward; that she loaned the same to the firm of Kennedy & Arnold on December 20, 1900, taking their note therefor drawing interest at twelve per cent. per annum; that said firm was then solvent, and was owing said trust $3,231.07, but she believed had since become and was at the date of the report wholly insolvent.

This report was approved by the court and G. B. Portis appointed guardian of said minor.

The gravamen of the complaint is that there came into said Florence's possession, as such guardian, a large sum of money, and at the time of her resignation there was due from her, as such guardian, the sum of $3,231.07, of which she failed to pay over

the sum of $1,976.26. By an amendment to the complaint a further breach of said bond was alleged, in that the said Florence, as such guardian, unlawfully loaned, without security, in one sum $3,000.00 of the funds belonging to her ward, on the 20th day of December, 1900, to Kennedy & Arnold, without an order or authority of court authorizing her to make said loan, whereby $1,976.26 of said funds were lost to said ward. The answer is in effect a general denial of the breaches of the bond. The evidence being submitted, the court directed the jury to return a verdict for the appellees, upon which judgment was rendered. From that judgment this appeal is prosecuted.

Much of the argument of appellant is based upon the assumption that the only authority for a final account or settlement of a guardian's trust is found in §§ 2084 and 2093, Mills' Ann. Stats., each of which contemplates a settlement after the termination of the relationship of guardian and ward. Counsel, therefore, contend that the reports of the guardian Florence, here in evidence, having been filed in the course of administration of the ward's estate, are *prima facie* evidence only, and are not conclusive against the surety on her bond, but may be attacked, altered, contradicted or explained in a collateral proceeding; and that the evidence was conclusive that the only property of the ward coming into said guardian's hands, after her appointment, was the Kennedy & Arnold note which was turned over to her successor in said trust; that said Florence, while administratrix of her father's estate, whence came the estate of her said ward, dissipated such funds and that, therefore, the judgment herein should have been for appellant.

If the premises assumed be true, appellant's conclusions are perhaps correct. It is a general prin-

ciple that sureties on a guardian's bond are liable only for the money or property that actually was, or came into, the hands of the guardian, during the term covered by the bond on which they were sureties, and that penal bonds are never held to be retrospective in their operation, unless plainly so intended and expressed. However, there are authorities which hold that where a guardian was also administratrix, and as such held trust funds to which the ward eventually became entitled, she will be regarded as holding the funds in the former capacity from the time any act of transfer took place, or from the time when she credited her prior trust accounts and charged herself as guardian, or from the time when her final accounts in the prior trust were settled, showing a balance due to her as guardian, though in the latter case no act of transfer ever took place.—15 A. & E. Enc. of Law (2d ed.) 94.

As to which is the true rule we need not and should not determine herein. The record, as it now stands, does not conclusively show facts sufficient to enable us to determine what the acts of said Florence were, as administratrix of her father's estate, or what was the status of said estate at the time of her reports as guardian.

*In re Thomas Estate* 26 Colo. 110, 126, this court said:

"In the absence of a statute to the contrary, periodical or partial settlements, as evidenced by reports of conservators, are at most, after approval by the court, but *prima facie* evidence of their correctness, and may be rectified or rebutted on a final accounting; they are not settlements, but only the exhibition of accounts; nor judgments, being merely *ex parte* presentations of the status of the estate in the hands of the conservator."

This applies with equal force to such periodical

or partial settlements as evidenced by reports of guardians.

The report filed January 27, 1902, was of this character; but the one approved at the time of accepting said Florence's resignation is of an entirely different character, force and effect.

Counsel have overlooked an important statute of this state which fixes beyond question the status of a report accompanying a guardian's resignation, and forming the basis upon which the court accepts the same.

Secs. 2084 and 2093, Mills' Ann. Stats., *supra,* is not the only authority for a final account or settlement of a guardian's trust under the law of this state. On the contrary, § 4728, Mills' Ann. Stats., then in force, expressly provides for the resignation, settlement of accounts by, and discharge of, guardians, which appears to have been followed in this case, and is conclusive of this controversy. That section is as follows:

"An executor or executrix, administrator or administratrix or guardian testamentary, or by appointment of a county court, may resign in writing to the county court having settlement or adjustment of his or her accounts, his, her or their office or offices; and when such resignation is accepted by such court, the person or persons so resigning shall be discharged from the further exercise of his, her or their office or offices: Provided, always, that the acceptance of such resignation shall be by a written order of said court, and shall not be construed to exonerate any executor or executrix, administrator or administratrix or guardian, or his or their securities, from liabilities incurred previous to such acceptance; and no such resignation shall be accepted until such executor or executrix, administrator or administratrix or guardian, shall have given notice of such intention

by publication, as required in cases of final settlement, and shall make and render a complete settlement of all matters in his hands as such administrator or administratrix, executor or executrix or guardian, up to the time of his or her resignation, and shall deliver into court all evidences of title, property, papers, moneys and choses in action in his or her hands; provided, also, that if the county court shall enter an order dispensing with such notice, then, and in such case, no such notice shall be given.''

Appellant, while admitting that a final report and action of the court thereon is conclusive, argues that the term ''final accounting,'' or ''final settlement,'' implies an accounting or settlement, after the severance of the relationship between guardian and ward. This is unquestionably true, and unless an event has transpired which causes the cessation of the guardian's authority, a settlement cannot be final. The reason of the rule is that the liability of the guardian extends beyond the time of such settlement. But where the guardianship ceases, as under the statute in question, the severance of the relationship between guardian and ward is complete—caused by the revocation of the guardian's authority, to wit, the acceptance of her resignation.

In *State v. Bilby*, 50 Mo. App. 162, 168, the rule is announced that the settlement which a guardian, on her removal, makes, is a final settlement—not in the sense of a settlement of the ward's entire guardianship during minority, but binding to the extent of the removed guardian's share in the same. Under our statute the fact that the guardianship continued, does not detract from the fact that it was closed so far as the acts of said guardian were concerned.— Schoul. Ex. & Ad., § 531.

A settlement made under said statute is a final account, regularly made, and constitutes a judgment

conclusive between the ward on one side and the guardian and surety on the other, unless impeached in the court in which it was rendered by proof of fraud, or such other defects as would invalidate judgments of other courts.—*State v. Bilby, supra;* § 532, Brandt Suretyship.

Such judgment was admitted in evidence without objection. Under these circumstances it is presumed 'that the county court acted correctly, and with due authority, and its judgment, so far as this controversy is concerned, is valid and conclusive, and said report final, and constitutes "a complete settlement of all matters in her hands as guardian."—1 Black Judg., § 124.

The acts of said Florence, as guardian, in loaning the money of her ward to Kennedy & Arnold were in direct conflict with her duty imposed by statute and constituted a breach of her bond.—§§ 2081 and 2088, Mills' Ann. Stats.

A loan by a guardian of her ward's money without strict compliance with the statutory requirements, as to such loan, is at the guardian's peril.—*Hughes v. People,* 111 Ill. 457; *Winslow v. People,* 117 Ill. 155.

The indebtedness of the guardian to the estate was ascertained and fixed by judgment of the county court, and it devolved upon her to either turn into the court cash to that amount, or show that she had loaned the same under authority of the court, and surrender the evidence of, and surety for, such loan. She did neither. The final report of the guardian and the action of the court thereon was conclusive against said guardian and this appellant, and a directed verdict was proper. The judgment was for the right parties and is accordingly affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.